[Cite as *Village of Terrace Park v. Anderson Twp. Bd. of Zoning Appeals*, 2015-Ohio-4602.]

# IN THE COURT OF APPEALS
# FIRST APPELLATE DISTRICT OF OHIO
# HAMILTON COUNTY, OHIO

| | | |
|---|---|---|
| THE VILLAGE OF TERRACE PARK, OHIO, | : | APPEAL NOS. C-140741 |
| | | C-140745 |
| THE VILLAGE OF NEWTOWN, OHIO, | : | TRIAL NO. A-1305724 |
| DEBORAH BLANKENSHIP, | : | |
| | | *O P I N I O N.* |
| MICHAEL BLANKENSHIP, | : | |
| JERRY L. BRANDHORST, | : | |
| DIANE C. BRANDHORST, | : | |
| BRUCE BURGER, | : | |
| CATHY BURGER, | : | |
| DAVID BURGER, | : | |
| ANNA CAREY, | : | |
| GEORGE G. CAREY, | : | |
| JAMES COOMER, | : | |
| LINDA COOMER, | : | |
| JULIANN COCHRAN, | : | |
| STEVEN COCHRAN, | : | |
| ANDREW CURRAN, | : | |
| CHRISTINE CURRAN, | : | |
| FRANK G. DISTLER, | : | |
| WANDA F. DISTLER, | : | |
| EUREKA RANCH PROPERTIES, INC., | : | |

JOSEPH W. FAHRENHOLTZ,                    :

LINDA J. FAHRENHOLTZ,                     :

ELLEN FOLEY,                              :

JEFFREY FRYE,                             :

SHIRLEY FRYE,                             :

TERRY GARVIN,                             :

LORETTA L. GORDON,                        :

JACK R. GORDON,                           :

JASON GORDON,                             :

NICOLE GORDON,                            :

GARY GOTTENBUSCH,                         :

PATRICIA GOTTENBUSCH,                     :

HA HA, INC.,                              :

HA HA II, INC.,                           :

DEBORAH A. HALL,                          :

DOUGLAS B.  HALL,                         :

ANNE W. HARRISON,                         :

DANIEL G. HENDERSHOT,                     :

ROBERTA A. HENDERSHOT,                    :

TERRI L. HERBERT TR,                      :

GARY LEE HICKS,                           :

GREGORY C. HOUNSHELL,                     :

GAIL HOUNSHELL,                           :

WILLIAM E. HOUSER TR,                     :

WILLARD HUGHETT,                    :

ANITA M. HUMPHRIES,                 :

THOMAS M. HUMPHRIES,                :

MICHAEL JOHNSTON,                   :

PEGGY JOHNSTON,                     :

LEAWANDA D. KAZEE,                  :

W. STANLEY KAZEE,                   :

M.P. PROPERTIES, INC.,              :

JEFFREY H. NEELEY,                  :

CATHERINE ROPAR,                    :

JEFFREY ROPAR,                      :

JOYCE SCHIMPF,                      :

SIX KIDS INVESTMENTS LLC,           :

HELEN M. STEELE,                    :

ROBERT J. STEELE,                   :

JUDITH WINSTEL,                     :

THOMAS WINSTEL,                     :

LYNN WOODWARD,                      :

CATHY Y. ZISTLER,                   :

    and                             :

JAMES A. ZISTLER,                   :

        **Plaintiffs-Appellees,**   :

        vs.                         :

ANDERSON TOWNSHIP BOARD OF
ZONING APPEALS,                          :

                                         :

ANDERSON TOWNSHIP,                        :

                                         :

ANDERSON TOWNSHIP BOARD OF
TRUSTEES,                                :

    and                                  :

MARTIN MARIETTA MATERIALS,               :
INC.,

        Defendants-Appellants.           :

Civil Appeals From:  Hamilton County Court of Common Pleas

Judgment Appealed From Is:  Reversed and Judgment Entered

Date of Judgment Entry on Appeal:  November 6, 2015

*Wood & Lamping LLP*, *Robert P. Malloy* and *Ryan F. Coutinho,* for Plaintiff-Appellee Village of Terrace Park, Ohio,

*Donnellon, Donnellon, and Miller* and *R. Douglas Miller*, for Plaintiff-Appellee Village of Newtown, Ohio,

*Timothy G. Mara* for Plaintiffs-Appellees Deborah Blankenship, Michael Blankenship, Jerry L. Brandhorst, Diane C. Brandhorst, Bruce Burger, Cathy Burger, David Burger, Anna Carey, George G. Carey, James Coomer, Linda Coomer, Juliann Cochran, Steven Cochran, Andrew Curran, Christine Curran, Frank G. Distler, Wanda F. Distler, Eureka Ranch Properties, Inc., Joseph W. Fahrenholtz, Linda J. Fahrenholtz, Ellen Foley, Jeffrey Frye, Shirley Frye, Terry Garvin, Loretta L. Gordon, Jack R. Gordon, Jason Gordon, Nicole Gordon, Gary Gottenbusch, Patricia Gottenbusch, Ha Ha, Inc., Ha Ha II, Inc., Deborah A. Hall, Douglas B. Hall, Anne W. Harrison, Daniel G. Hendershot, Roberta Hendershot, Terri L. Herbert TR, Gary Lee Hicks, Gregory C. Hounshell, Gail Hounshell, William E. Houser TR, Willard Hughett, Anita M. Humphries, Thomas M. Humphries, Michael Johnston, Peggy Johnston, Leawanda D. Kazee, W. Stanley Kazee, M.P. Properties, Inc., Jeffrey H. Neeley, Catherine Ropar, Jeffrey Ropar, Joyce Schimpf, Six Kids Investments LLC,

Helen M. Steele, Robert J. Steele, Judith Winstel, Thomas Winstel, Lynn Woodward, Cathy Y. Zistler, and James A. Zistler,

*Gary E. Powell* for Defendants-Appellants Anderson Township Board of Zoning Appeals, Anderson Township, and Anderson Township Board of Trustees,

*Kegler, Brown, Hill & Ritter*, *Richard C. Brahm* and *Catherine A. Cunningham*, *Barrett & Weber* and *C. Francis Barrett*, for Defendant-Appellant Martin Marietta Materials, Inc.

**Please note:  this case has been removed from the accelerated calendar.**

**Моск, Judge.**

{¶1}    In these consolidated administrative appeals, we are faced again with a zoning dispute over a proposed underground limestone mining operation on the eastside of greater Cincinnati.  Defendants-appellants Martin Marietta Materials, Inc., ("Martin Marietta"), Anderson Township, Anderson Township Board of Trustees, and the Anderson Township Board of Zoning Appeals ("BZA") appeal from the trial court's judgment reversing the BZA's approval of Martin Marietta's zoning application.  Plaintiffs-appellees the Villages of Terrace Park, Ohio, and Newtown, Ohio, as well as more than 60 individuals and corporations urge us to affirm the trial court's decision.

{¶2}    The trial court determined that the BZA had acted illegally by: (1) permitting mining in a residential district, (2) characterizing mining tunnels as "ingress and egress" through a residential district, (3) allowing storage of explosives, (4) determining that the mine would meet the vibration-performance standard, and (5) failing to review the entirety of the evidence presented at the public hearings.  Because we conclude that the trial court's decision with respect to these issues is not supported by a preponderance of reliable, probative, and substantial evidence, or is otherwise contrary to law, we reverse the judgment of the trial court.

**Background Facts and Procedural History**

{¶3}    Martin Marietta owns 480 acres of property in Anderson Township near the Little Miami River (the "Property"), which is the subject of this appeal.  The Property sits between U.S. Route 50 and State Route 32, west of Interstate 275.  Broadwell Road, a county road, bisects the Property into northern and southern halves.  The Property had been used as a surface sand-and-gravel mine for more than

6

50 years, until sometime in the mid- to late-1990s, but is now vacant. In 2008, Martin Marietta filed an application with Anderson Township for a conditional use permit and variances to build an underground limestone mining operation and surface processing plant on the Property. The Anderson Township Zoning Resolution ("ATZR") Section 114.2 permits "[e]xtracting, excavating, mining or processing of sand, rock and/or gravel" as a "conditional use" in an Industrial Development District ("ID District"), subject to the issuance of a "special zoning certificate" by the BZA. The majority of the Property is located within an ID District; however, a strip of the Property abutting the southern edge of Broadwell Road is located in a "B" Residence District. Mining is not permitted in the "B" Residence District.

{¶4} In its application, Martin Marietta proposed to build two, side-by-side tunnels on the Property. The tunnels would begin above ground at the processing plant north of Broadwell Road, continue underneath Broadwell Road, and end south of Broadwell Road in the underground limestone mine. Martin Marietta would use a large drill to create the tunnels, and then install conveyor belts inside the tunnels. The tunnels would be the only means to access the underground limestone housed 400 to 800 feet below ground level.

{¶5} Following over a year of hearings before the BZA, the BZA approved Martin Marietta's application, subject to certain conditions. Various corporate entities, individuals, and the Villages of Indian Hill, Newtown, and Terrace Park, Ohio, filed administrative appeals from the BZA's decision to the court of common pleas under R.C. 2506.01, objecting to the BZA's approval of the mine. One of the many issues raised by the opponents of the mine in the first administrative appeal

included the BZA's condition of the "Good Neighbor Agreement." The Good Neighbor Agreement allowed Anderson Township to collect five cents per every ton of material sold by Martin Marietta in its mining operation. The opponents also raised issues regarding dust, noise, traffic, pollution, and vibrations that the mine might generate, as well as other issues.

{¶6} In the first administrative appeal, the trial court determined that the BZA had exceeded its authority, and that the BZA's decision was not supported by substantial, reliable, and probative evidence. The trial court listed several reasons for its conclusion, including, but not limited to, dust, noise, traffic, pollution, and vibrations, and that the Good Neighbor Agreement was not authorized by law. Thus, the trial court reversed the BZA's decision and declared it "null and void."

{¶7} Martin Marietta appealed to this court, raising several assignments of error, including an assignment of error dealing solely with the Good Neighbor Agreement. In that assignment, Martin Marietta argued that the trial court should have stricken the Good Neighbor Agreement from the BZA's decision and allowed the BZA's decision to remain intact, or, alternatively, that the trial court should have remanded the matter to the BZA for further reconsideration, rather than declaring the BZA's decision null and void. A panel of this court agreed with the trial court's determination that the BZA could not condition its approval of Martin Marietta's application on the Good Neighbor Agreement; however, this court sustained Martin Marietta's assignment of error in so far as this court concluded that the trial court erred in finding that the BZA's decision was void in total. We instructed the trial court to remand the matter to the BZA to decide "in the first instance" whether to grant Martin Marietta's application without the Good Neighbor Agreement. *See*

8

*Citizens Against Blasting on Our Miami (CABOOM) v. Anderson Twp.*, 1st Dist. Hamilton Nos. C-120011, C-120012, C-120013, C-120014 and C-120015, 2012-Ohio-6145, ¶ 32.

{¶8}   The BZA held an executive session to consider this court's decision on remand.  The BZA then readopted its original decision in all respects, except to omit the condition containing the Good Neighbor Agreement.

{¶9}   The Villages of Terrace Park and Newtown, Ohio, as well as 62 corporate entities and individuals filed a joint administrative appeal in the case numbered A-1305724, again challenging the BZA's decision on multiple grounds. The trial court again reversed the BZA's decision approving Martin Marietta's application.  The trial court determined that the BZA membership had changed since the first BZA decision, and that the second panel of BZA members merely "rubber stamped" the first BZA decision.  The trial court also determined that the BZA erred by: (1) permitting mining in a residential district; (2) characterizing the two underground tunnels as "ingress and egress" to the limestone mine; (3) allowing the storage of a one-month supply of explosives on the Property; and (4) determining that Martin Marietta met the vibration standard set forth in the ATZR.

{¶10} Martin Marietta has appealed from the trial court's decision, and Anderson Township, the Anderson Township Board of Trustees, and the BZA have also filed an appeal.  The Villages of Newtown and Terrace Park, Ohio, as well as the corporate entities and individuals (the "Opponents") filed a joint responsive brief as appellees.

## Judicial Review of Zoning Decisions

{¶11} The General Assembly has delegated to boards of townships trustees the authority to legislate land use within their townships under R.C. 519.02. A board of township trustees, sitting as a legislative body, "is charged with the duty of determining the wisdom of zoning regulations, and the judicial judgment is not to be substituted for the legislative judgment in any case in which the issue or matter is fairly debatable." *Willott v. Beechwood*, 175 Ohio St. 557, 560, 197 N.E.2d 201 (1964).

{¶12} Townships boards of zoning appeals also exist by way of statute under R.C. 519.14. Pertinent to these appeals, R.C. 519.14(B) permits a board of zoning appeals to grant variances from a zoning resolution "as will not be contrary to the public interest, where, owing to special conditions, a literal enforcement of the resolution will result in unnecessary hardship, and so that the spirit of the resolution shall be observed and substantial justice done[.]" Furthermore, R.C. 519.14(C) permits a board of zoning appeals to grant a conditional zoning certificate for those specific land uses permitted by a zoning resolution.

{¶13} A person aggrieved by a decision of a township board of zoning appeals has a right to appeal the board's decision to the court of common of pleas under R.C. 2506.01. *State ex rel. Travelcenters of Am., Inc. v. Westfield Twp. Zoning Comm.*, 87 Ohio St.3d 161, 164, 718 N.E.2d 430 (1999). The court of common pleas reviews the board's decision to determine whether the decision "is unconstitutional, illegal, arbitrary, capricious, unreasonable, or unsupported by the preponderance of substantial, reliable, and probative evidence on the whole record." *See* R.C. 2506.04. Although R.C. 2506.04 empowers the trial court to weigh the evidence adduced at

the administrative level in determining whether a preponderance of substantial, reliable, and probative evidence exists to support the decision of the board of zoning appeals, the trial court "should not substitute its judgment" for that of the board in the absence of such a finding. *See Kisil v. Sandusky*, 12 Ohio St.3d 30, 34, 465 N.E.2d 848 (1984). As this court has stated, a zoning board's decision is "presumed to be valid, and the burden is upon the party contesting the board's determination to prove otherwise." *Klein v. Hamilton Cty. Bd. of Zoning Appeals*, 128 Ohio App. 3d 632, 636, 716 N.E.2d 268 (1st Dist.1998), citing *Consol. Mgmt., Inc. v. City of Cleveland,* 6 Ohio St.3d 238, 240, 452 N.E.2d 1287 (1983).

{¶14} An appellate court reviewing a trial court's decision under R.C. 2506.04 has a more "limited function" than the trial court. *Kisil* at 465*.* The appellate court can review the judgment of the trial court under R.C. 2506.04 only on "questions of law," which does not permit the appellate court "to weigh the preponderance of substantial, reliable[,] and probative evidence." (Internal quotations omitted.) *Id.* at fn. 4. The standard of review applied by the appellate court in a R.C. 2506.04 administrative appeal "strongly favor[s] affirmance" of the trial court, and the appellate court may only reverse the trial court if the trial court "errs in its application or interpretation of the law or its decision is unsupported by a preponderance of the evidence as a matter of law." *Cleveland Clinic Found. v. Bd. of Zoning Appeals*, 141 Ohio St.3d 318, 2014-Ohio-4809, 23 N.E.3d 1161, ¶ 30.

{¶15} With this framework in mind, we address these appeals.

**Appeal by Martin Marietta (C-140741)**

{¶16}  In Martin Marietta's first assignment of error, it contends that the trial court erred in its determination that the BZA had illegally: (1) permitted mining in a residential district; (2) characterized mining tunnels as "ingress and egress"; (3) permitted the storage of explosives; and (4) concluded that Martin Marietta had met the vibration standards.  We will address each of these grounds in turn.

**Mining in a Residential District**

{¶17}  Martin Marietta first argues that the trial court erred when it determined that the BZA acted without authority by permitting Martin Marietta to mine in a residential district.  Martin Marietta owns a strip of property alongside the southern edge of Broadwell Road, which is zoned residential.  Neither party disputes that mining is a prohibited land use in a residential district.

{¶18}  Martin Marietta's original application requested to mine underneath Broadwell Road, and both north and south of Broadwell Road, which would include mining in the residential strip.  The vice president of Martin Marietta, Steve Raffensperger, also testified at one of the first BZA hearings that mining would take place north and south of Broadwell Road.  Later in the administrative process, however, Raffensperger testified that Martin Marietta would not mine within 50 feet of any roadway or property line, or within 200 to 250 feet of any residential property.

{¶19}  Regardless of the conflicting evidence presented before the BZA, the BZA's decision granting Martin Marietta a special zoning certificate limited mining to the ID District south of Broadwell Road.  Thus, the BZA did not authorize Martin Marietta to mine in a residential district.

{¶20} The Opponents argue that the tunnels, which will travel underground through the residential strip, are an "integral" part of the mine and cannot logically be excluded from "mining" under the ATZR. Martin Marietta does not dispute that the tunnels will be integral to its overall mining operations; however, Martin Marietta argues that the tunnels do not constitute "mining" under the plain meaning of that term.

{¶21} The application of a legislative enactment to the underlying facts, as well as interpretation of a legislative enactment, are questions of law that an appellate court reviews de novo. *See Cleveland Clinic Found.*, 141 Ohio St.3d 318, 2014-Ohio-4809, 23 N.E.3d 1161, at ¶ 25; *JP Morgan Chase Bank, Inc. v. Dublin*, 10th Dist. Franklin No. 10AP-965, 2011-Ohio-3823, ¶ 11. Courts apply the same rules of construction when reviewing a zoning ordinance as those applied in reviewing a statute. *City of Columbiana v. J & J Car Wash, Inc.*, 7th Dist. Columbiana No. 04 CO 20, 2005-Ohio-1336, ¶ 32.

{¶22} Words in a legislative enactment must be accorded their usual, customary meaning. *Olentangy Local Schools Bd. of Edn. v. Delaware Cty. Bd. of Revision*, 141 Ohio St.3d 243, 2014-Ohio-4723, 23 N.E.3d 1086, ¶ 30. "Mining" means "[t]o extract (ore or minerals) from the earth." *American Heritage Dictionary* 1118 (4th Ed.2000). Raffensperger testified that the tunnels themselves will not be mined and do not produce any marketable limestone or products. As a result, we agree with Martin Marietta that the tunnels do not constitute "mining" as that term is used in the ATZR.

{¶23} Because the tunnels do not constitute "mining" in a residential district, and the BZA's decision reflects that mining shall occur south of Broadwell Road only,

the trial court's determination that the BZA illegally permitted mining in a residential district is unsupported by a preponderance of the evidence as a matter of law.

## Tunnels as "Ingress and Egress"

{¶24} Martin Marietta next argues that the trial court erred when it determined that the BZA acted illegally by characterizing the twin mining tunnels as "ingress and egress," and granting a special zoning certificate for that purpose.

{¶25} ATZR Section 184.8-4-1 authorizes the BZA to grant a special zoning certificate for "ingress and egress" to an ID District "through a more restricted district." According to Martin Marietta's application, Martin Marietta will dig tunnels diagonally from the surface-processing plant north of Broadwell Road, under Broadwell Road, and through the residential strip to the underground mine south of Broadwell Road located in the ID District. The tunnels will be the only means to access the mine, with one tunnel transporting workers and tools, and the other transporting the mined product to the processing plant. The BZA relied on ATZR Section 184.8-4-1 in determining that the tunnels constituted "ingress and egress" under the ATZR.

{¶26} The Opponents argue that ATZR Section 184.8-4-1 is a subsection of ATZR Section 184.8-4, which permits the BZA to issue a special zoning certificate for parking lots. Reading ATZR Section 184.8-4 and ATZR Section 184.8-4-1 together, Opponents contend, permits the BZA to issue a special zoning certificate for ingress and egress only for traffic to and from an approved parking lot. The Opponents further argue that the BZA cannot issue a special zoning certificate for "ingress and

egress" through the residential district because Martin Marietta owns both the ID District and the residential district.

{¶27} The Opponents' argument regarding ATZR Section 184.8-4-1 as a subsection of ATZR Section 184.8-4 is illogical based upon further reading of ATZR Section 184.8. For example, ATZR Section 184.8-5 permits the BZA to issue a special zoning certificate for "[r]iding stables or fishing lakes, including the sale of food and refreshments." The next section, ATZR Section 184.8-5-1, permits the BZA to issue a special zoning certificate for "the location and erection and use of private radio transmitter and/or tower in a district in which it is prohibited." To apply Opponents' interpretation of ATZR Section 184.8 to a scenario under ATZR Section 184.8-5, the BZA could only issue a special zoning certificate for the location, erection, and use of a radio transmitter in conjunction with a special zoning certificate for a riding stable or fishing lake. Such an interpretation defies common sense. A court will not interpret a legislative enactment in such a way that leads to an illogical result. *AT&T Communications of Ohio, Inc. v. Lynch*, 132 Ohio St.3d 92, 2012-Ohio-1975, 969 N.E.2d 1166, ¶ 18. Thus, despite a peculiar numbering scheme under ATZR Section 184.8, we reject Opponents' argument that ATZR Section 184.8-4-1 is a subsection of ATZR Section 184.8-4.

{¶28} We similarly reject Opponents' argument that ATZR Section 184.8-4-1 cannot apply because Martin Marietta owns both the ID District and the "more restricted district" through which ingress and egress is sought. ATZR Section 184.8-4-1 does not mention identity of ownership of the districts as a prerequisite to application of "ingress and egress." Courts will not add words into a legislative

enactment. *Blair v. Bd. of Trustees of Sugarcreek Twp.*, 132 Ohio St.3d 151, 2012-Ohio-2165, 970 N.E.2d 884, ¶ 19.

{¶29} Applying a plain-meaning analysis, ingress is defined as "[a] means or place of entering," and egress is defined as "[a] path or opening for going out; an exit." *American Heritage Dictionary* 901, 571 (4th Ed.2000). According to the evidence in the record, the tunnels will be used to enter and leave the underground mine in the ID District, through the "B" Residence District. Therefore, the tunnels will be used for ingress and egress to the ID District, through a more restricted district, under a plain meaning of those terms.

{¶30} Even if we were to find the meaning of "ingress and egress" under the ATZR ambiguous, we would defer to the BZA's interpretation of its own zoning regulation. *Glass City Academy, Inc. v. Toledo*, 179 Ohio App.3d 796, 2008-Ohio-6391, 903 N.E.2d 1236, ¶ 18 (6th Dist.) ("An administrative agency's reasonable interpretation of local zoning codes is recognized as an area of administrative expertise."); *Elbert v. Bexley Planning Comm.*, 108 Ohio App.3d 59, 69, 670 N.E.2d 245 (10th Dist.1995) (Commission's interpretation of a zoning ordinance "reasonable and entitled to weight"); *Union Twp.-Clermont Cty., C.I.C., Inc. v. Lamping*, 2015-Ohio-1092, 31 N.E.3d 116, ¶ 25 (12th Dist.). Here, the BZA determined that the tunnels constituted ingress and egress, and that determination deserves deference in the face of any ambiguity. Moreover, any ambiguity in zoning regulations must also be construed in favor of the property owner. *See Cleveland Clinic*, 141 Ohio St.3d 318, 2014-Ohio-4809, 23 N.E.3d 1161, at ¶ 40. Thus, any ambiguity in the meaning of ingress and egress in the ATZR would be construed to Martin Marietta's benefit as the property owner.

{¶31} As a result, the decision of the common pleas court, finding that the BZA erred in determining the tunnels constituted ingress and egress, is incorrect as a matter of law, and is not supported by a preponderance of the evidence as a matter of law.

### Storage of Explosives in the ID District

{¶32} Martin Marietta next argues that the trial court erred when it determined that the BZA violated Ohio law and the ATZR by permitting storage of a one-month supply of explosives on the Property.

{¶33} The ATZR prohibits storage of explosives in the ID District under ATZR Section 112.2.16. The BZA determined that because storage of explosives will not be the "primary use" of the Property, but only an activity incidental to mining, ATZR Section 112.2.16 does not apply. Article XII of the ATZR, however, makes no distinction between a primary use and an incidental use. *Compare Cash v. Brookshire United Methodist Church*, 61 Ohio App.3d 576, 573 N.E.2d 692 (10th Dist.1988) (where the applicable zoning code defined accessory use). We will not interpret ATZR Section 112.2.16 in such a way to add the primary-versus-incidental distinction where none exists. *See Blair*, 132 Ohio St.3d 151, 2012-Ohio-2165, 970 N.E.2d 884, at ¶ 19. Thus, we find ATZR Section 111.2.16 applicable to Martin Marietta's application.

{¶34} Even though we determine ATZR Section 112.2.16 applies, the BZA nevertheless granted Martin Marietta a use variance allowing a one-month supply of explosive storage. A use variance authorizes a property owner to maintain an otherwise prohibited land use on his or her property. *Nunamaker v. Bd. of Zoning Appeals of Jerusalem Twp.*, 2 Ohio St.3d 115, 443 N.E.2d 172 (1982). Under R.C.

519.14(B), a township may grant a variance from a zoning resolution "where, owing to special conditions, a literal enforcement of the resolution will result in unnecessary hardship"; "variance from the terms of the zoning resolution * * * will not be contrary to the public interest"; and "the spirit of the resolution shall be observed and substantial justice done."

{¶35} As a general rule, where a strict application of the zoning code results in diminished profit for a commercial property owner, the property owner cannot claim unnecessary hardship, as long other profitable alternatives for the property exist. *Consol. Mgmt., Inc.,* 6 Ohio St.3d 238, 452 N.E.2d 1287, paragraph two of the syllabus. Moreover, a commercial property owner cannot receive a use variance for self-imposed hardships where the property owner purchased the property with knowledge of the zoning limitations. *Id.* at paragraph one of the syllabus.

{¶36} ATZR Section 184.2 allows the BZA to grant a use variance for unnecessary hardship for the reasons provided in R.C. 519.14(B). ATZR Section 184.2-1 lists four conditions that the BZA must consider and weigh when determining whether a property owner has encountered unnecessary hardships: (1) exceptional or extraordinary circumstances apply to the property that do not apply generally to other properties in the same zoning district or vicinity; (2) the special circumstances or conditions do not result from actions of the property owner or any predecessors in title; (3) the variance is necessary for the preservation and enjoyment of a substantial property right of the applicant that is possessed by owners of other properties in the same zoning district or vicinity; and (4) the variance will not be materially detrimental to the public welfare or injurious to nearby property.

{¶37} The BZA in its decision considered all four conditions under ATZR Section 184.2-1 in determining that unnecessary hardship existed. In its consideration of the first factor, exceptional or extraordinary circumstances, the BZA noted that the Property had previously been used as a gravel-and-sand mine, and that explosives would be necessary to extract the limestone. As to the second factor, actions of the property owner, the BZA determined that Martin Marietta did not create the special conditions related to the Property. As to the third factor, preservation and enjoyment of a substantial property right, the BZA found that the use of explosives was necessary for Martin Marietta to preserve its valuable mineral rights on the Property. The BZA placed the most emphasis on the fourth factor—consideration of the public welfare. The BZA determined that the public in general would be safer if Martin Marietta transported the explosives on a monthly basis, instead of on a daily basis. Martin Marietta's blasting expert had testified at the BZA hearings that roadway transportation of explosives is a greater safety concern than storage of explosives at the mine site. The BZA also noted that Martin Marietta would be required to adhere to all applicable federal and state regulations in transportation and storage of the explosives.

{¶38} In overturning the BZA's decision regarding the storage of explosives, the trial court did not give any reasoning for its conclusion. Nor do Opponents address the use variance granted by the BZA in their response to Martin Marietta's assignment of error. Thus, we do not have the benefit of reasoned argument as to why the trial court determined the use variance to be illegal. Based upon our review of the record and the BZA's decision, however, we conclude that the decision of the common pleas court overturning the BZA's decision regarding a use variance for the

storage of explosives is not supported by a preponderance of reliable, probative, and substantial evidence.

{¶39} Martin Marietta concedes that it could bring explosives to the Property on a daily basis, and, presumably, Martin Marietta acquired the Property with knowledge of the limitation on explosive storage, which would militate against a finding of unnecessary hardship. *See Consol. Mgmt., Inc.,* 6 Ohio St.3d 238, 452 N.E.2d 1287, at paragraphs one and two of the syllabus. Nevertheless, as the BZA determined, the practical result of prohibiting Martin Marietta from storing explosives would be detrimental to the public welfare—Martin Marietta would then truck-in explosives on a daily basis over the public roadways. According to Martin Marietta's blasting expert, roadway travel of explosives is more dangerous than explosive storage. Furthermore, according to the evidence in the record, the storage of explosives is highly regulated by federal agencies, such as the Bureau of Alcohol, Tobacco, Firearms, and Explosives. The explosives must be stored in locked containers, and only those individuals with specialized training can handle explosives.

{¶40} Thus, we determine that the trial court's decision reversing the BZA's approval of a use variance for the storage of explosives is unsupported by a preponderance of reliable, probative, and substantial evidence.

### Vibration-Performance Standards

{¶41} Martin Marietta next argues that the trial court erred when it determined that the BZA violated Ohio law and the ATZR with regard to the level of perceptible vibrations from the mine.

{¶42} In granting a special zoning certificate for a conditional use, such as mining, ATZR Section 184.7 requires the BZA to consider "the compatibility of such uses with surrounding uses and the effect of such uses upon the health, safety, and morals of the community," as well as the "performance standards" listed under ATZR Section 116. These performance standards include ATZR Section 116.8, which provides that "[n]o vibration or shock perceptible to a person of normal sensibilities at or beyond the property line shall be permitted."

{¶43} Martin Marietta originally sought a variance from ATZR Section 116.8 based upon its proposed blasting vibration level of .2 inches per second. At the BZA hearings, experts in occupational medicine, blasting, and vibration presented conflicting testimony as to whether the proposed vibration level of .2 inches per second would be felt at or beyond the Property. Martin Marietta then presented testimony from Otto Crenwelge, a mechanical engineer and an expert in controlling vibrations. Crenwelge testified that the vibrations from the blasting could be controlled with timing of the blasts and frequency levels so as to eliminate perceptible vibration beyond the Property. Attorneys for the Opponents objected that Crenwelge's testimony had been added after Martin Marietta's "case in chief," and that Crenwelge's testimony went beyond the scope of "rebuttal," because Crenwelge testified to a "new" blasting technique. The BZA nevertheless considered Crenwelge's testimony.

{¶44} Martin Marietta withdrew its request for a variance from ATZR Section 116.8, and, instead, the BZA conditioned its approval of Martin Marietta's application on Martin Marietta's agreement to "use a combination of frequency control, charge weights, timing, and duration of blasts * * * to meet the standard" in

ATZR Section 116.8, consistent with the blasting technique testified to by Crenwelge. The BZA's decision also required Martin Marietta to maintain blasting records and make those records available to Anderson Township. Moreover, the BZA conditioned its approval of Martin Marietta's application on Martin Marietta's agreement to conduct pre-blast surveys by a qualified third party to establish baseline blasting conditions.

{¶45} The Opponents argue that Martin Marietta's proposed blasting technique permits "trial and error" with regard to perceptible vibrations; however, this is merely lawyer argument without evidentiary support in the record. The Opponents also point this court to the trial court's first decision on the discussion of vibrations. In its first decision, the trial court relied upon a witness who testified at the BZA hearings, who had lived one mile away from a Martin-Marietta-owned mine in Carmel, Indiana. The witness testified that she had felt vibrations from the blasting done at that mine. The record indicates that the Martin Marietta mine in Carmel, Indiana, was an open, surface mine, and not an underground mine. Moreover, the witness had never made any formal complaints about the vibrations. Thus, the testimony from the Carmel, Indiana, witness is not relevant to the issue of whether vibrations from the proposed underground limestone mine will meet the vibration standard under the ATZR.

{¶46} The decision of the common pleas court, reversing the BZA's determination that Martin Marietta had met the ATZR vibration-performance standard, is not supported by a preponderance of reliable, probative, and substantial evidence.

{¶47} Therefore, the trial court's decision determining that the BZA had illegally permitted mining in a residential district, characterized mining tunnels as "ingress and egress," permitted the storage of explosives, and concluded that Martin Marietta had met the vibration standard is not supported by a preponderance of reliable, probative, and substantial evidence, and is incorrect as a matter of law. We sustain Martin Marietta's first assignment of error.

### BZA's Decision on Remand

{¶48} In Martin Marietta's second assignment of error, it argues that the trial court erred as a matter of law in determining that the decision of the BZA was illegal, capricious, arbitrary, unreasonable, and unsupported by a preponderance of the evidence. Within this assignment of error, Martin Marietta argues that the trial court erred in determining that the second panel of BZA members had obfuscated its duty to review the evidence presented on Martin Marietta's application. During the appeal of the BZA's first decision, the membership of the BZA changed. After this court reversed the BZA's condition containing the Good Neighbor Agreement and remanded the case for the BZA to consider whether to grant Martin Marietta's application without the Good Neighbor Agreement, the second BZA panel held an executive session. The second BZA panel emerged from executive session and adopted the decision of the first BZA panel, albeit without the Good Neighbor Agreement. The trial court found reversible error with the second BZA panel's decision because nothing in the record demonstrated that the second BZA panel had undertaken a review of the hearings before the first BZA panel.

{¶49} In urging an affirmance of the trial court, the Opponents argue that the second BZA must consider all of the evidence presented before the first BZA, as

stated in *State ex rel. Ormet Corp. v. Indus. Comm. of Ohio*, 54 Ohio St.3d 102, 561 N.E.2d 920 (1990). In *Ormet Corp.*, the Supreme Court considered whether a disability-benefits claimant's due-process rights were violated where one hearing commissioner on a panel had been absent from the evidentiary hearing and failed to consider the evidence that had been presented. The record in *Ormet Corp.* showed that the commissioner did not attend the evidentiary hearing, the hearing had not been transcribed, no summary of the hearing had been prepared, and no other meeting had occurred between the absent commissioner and the other panel members. In holding that the claimant's rights had been violated, the court held that a decision maker "must, in some meaningful manner, consider evidence obtained at hearing." *Id.* at 107. The court rejected any requirement that the absent commissioner personally review the evidence. *Id.* at 104.

{¶50} Assuming that *Ormet Corp.* can be invoked by the Opponents in this case, *Ormet Corp.* is nevertheless distinguishable. First, *Ormet Corp.* dealt with a panel member who failed to attend an evidentiary hearing attended by the other decision makers; here, we have a new panel of decision makers, none of whom attended the evidentiary hearings, faced with a decision overturned on appeal. Turnover among administrative decision makers is common while administrative decisions are appealed. *City of Alliance v. Lexington Twp. Bd. of Trustees.*, 5th Dist. Stark No. 10-CA-289, 2011-Ohio-3328, ¶ 29. Second, although the BZA met in executive session to consider this court's remand order, nothing in the record suggests that the second BZA panel failed to consider the evidence presented. The hearing commissioner in *Ormet Corp.* admitted that he had not considered "in any manner" the evidence presented at the hearing. *Ormet Corp.* at 107.

24

{¶51} Moreover, this court's remand order presented the second BZA panel with a discrete question: Would the BZA grant Martin Marietta's application without the illegal Good Neighbor Agreement? In answering "yes" to that question, the second BZA panel could rely on the detailed analysis and conclusions contained in the 16-page decision issued by the first BZA panel, and readopt that decision without the Good Neighbor Agreement condition. The condition was ancillary to the other contested issues in the zoning application, and nothing in this court's original remand order required the BZA to hold further public hearings on the matter.

{¶52} Therefore, we conclude that the trial court's determination that the BZA had obfuscated its duty to review the evidence presented on Martin Marietta's application is contrary to law and unsupported by a preponderance of the evidence as a matter of law. Therefore, we sustain Martin Marietta's second assignment of error.

### Appeal by Anderson Township (C-140745)

{¶53} In a single assignment of error, Anderson Township, the Anderson Township Board of Trustees, and the BZA argue that the trial court erred in overturning the BZA's decision. At the outset, we note that the BZA itself lacks standing to appeal from the trial court's judgment reversing its decision. *See A. DiCillo & Sons v. Chester Zoning Bd. of Appeals*, 158 Ohio St. 302, 109 N.E.2d 8 (1952). Nevertheless, Anderson Township and its Board of Trustees have an interest in enforcing its zoning laws, which gives them standing to appeal from the trial court's decision overturning the decision of the BZA. *See Parker v. Swancreek Twp. Bd. of Zoning Appeals*, 6th Dist. Fulton Nos. F-04-035, F-04-036 and F-04-038, 2005-Ohio-538.

{¶54} The arguments raised by the Anderson Township appellants in their assignment of error essentially revisit the arguments made by Martin Marietta. Thus, for the reasons stated in the disposition of Martin Marietta's assignments of error, we also sustain the Anderson Township appellants' assignment of error.

## Conclusion

{¶55} The judgment of the common pleas court is reversed, and under App.R. 12(B), we enter the judgment that the trial court should have rendered, affirming the decision of the BZA.

Judgment accordingly.

DeWINE, J., concurs.
HENDON, P.J., concurs separately.

HENDON, P.J., concurring separately,

{¶56} Because the appellees chose not to raise the issue of the trial court's failure to include findings related to the evidence presented on the ancillary byproducts of the mining operation, i.e. traffic, dust, and noise, I am able to concur in the majority's decision. Those issues remain unresolved to my satisfaction even after the trial court's ruling.

{¶57} In addition, I continue to be apprehensive about the BZA's decision that the tunnels do not constitute "mining" because they are an acknowledged integral part of the mining operation as proposed. Had I been part of the BZA, I may have reached a different conclusion on this subject; however, I am constrained by the standard of review applicable in administrative appeals.

{¶58} Consequently, I am compelled to concur in the majority's analysis and well-reasoned decision.

Please note:

The court has recorded its own entry on the date of the release of this opinion.