[Cite as *Cook v. Lockland*, 2024-Ohio-9.]

# IN THE COURT OF APPEALS
# FIRST APPELLATE DISTRICT OF OHIO
# HAMILTON COUNTY, OHIO

| | | |
|---|---|---|
| RAYMOND COOK, | : | APPEAL NO. C-230281 |
| | | TRIAL NO. A-2104120 |
| Plaintiff \-Appellant, | : | |
| vs. | : | |
| | | *O P I N I O N.* |
| VILLAGE OF LOCKLAND, OHIO, | : | |
| and | : | |
| VILLAGE OF LOCKLAND, OHIO, BOARD OF ZONING APPEALS | : | |
| | : | |
| Defendants-Appellees. | : | |

Civil Appeal From: Hamilton County Court of Common Pleas

Judgment Appealed From Is: Reversed and Cause Remanded

Date of Judgment Entry on Appeal: January 5, 2024

*Suder, LLC, J.P. Burleigh* and *Sean S. Suder*, for Plaintiff-Appellant,

*Surdyk, Dowd & Turner Co., LPA*, *Susan M. Deaton*, *Jeffrey C. Turner*, *Dawn M. Frick*, *Wood + Lamping LLP* and *Kathleen F. Ryan*, Law Director for the Village of Lockland, Ohio, for Defendants-Appellees.

**Bock, Judge.**

{¶1}    Plaintiff-appellant Raymond Cook was a lifelong resident of Lockland, Ohio. Cook's family had owned a business, Cook's Garage, in Lockland for more than 70 years. When the state, via eminent domain, took the property that had housed Cook's Garage, Cook found two parcels in Lockland to become the new home for Cook's Garage.

{¶2}    But defendant-appellee Village of Lockland, Ohio, Board of Zoning Appeals ("the BZA") determined that defendant-appellant Village of Lockland, Ohio's, ("Village") 2012 zoning ordinance prohibited Cook from using one of the parcels for vehicle storage for his automobile-repair business. Cook appealed that decision to the Hamilton County Court of Common Pleas, asserting that his use of the property was a legal nonconforming use because it continuously had been used for automobile-repair purposes since before the ordinance was enacted. The trial court overruled his objections to the magistrate's decision upholding the BZA's decision.

{¶3}    The BZA's decision improperly placed the burden of proof on Cook to show that the use had not been abandoned. Further, the BZA did not consider any of the plethora of evidence that was submitted by Cook to show the continuance of the legal nonconforming use. In affirming the BZA's decision, the trial court did not acknowledge those errors. Instead, finding that Cook had notice of the Village's position, it affirmed the BZA's decision. Because we hold that the decisions of the BZA and the trial court were contrary to law, we reverse the trial court's judgment and remand this cause to the trial court.

**Facts and Procedure**

**A. Cook found a new property to locate his family business**

{¶4} In July 2015, Cook, intending to relocate Cook's Garage, purchased two adjacent parcels in Lockland at 116 Anna Street ("Anna property") and 336 W. Wyoming Avenue ("Wyoming property"). Both parcels contained large garage-service bays and paved parking areas. Cook intended for Cook's Garage to repair cars in the garage bays and temporarily store cars awaiting repairs in the parking lot.

{¶5} The day after Cook purchased the parcels, he received a letter from the Village's counsel, which notified him that, since April 2012, both parcels had been zoned "RO, Residential Office," and therefore, were subject to the Village's Zoning Code's nonconforming-use provisions. It included the ordinances governing both the nonconforming use of properties and the RO district, which did not allow automobile-repair businesses. The letter informed Cook that only the Anna property could be used for automobile-body repair.

{¶6} Regarding the Wyoming property, the letter asserted that it had been vacant for at least four years, before the Village enacted its 2012 zoning ordinances. The letter informed Cook that any use of the Wyoming property had to "wholly conform[] with the provisions of Chapter 1252, RO Residential Office Zoning District." The letter contained two sets of street view photographs pulled from Google.com. An August 2009 photograph showed cars parked in the parking lot with a "Lockland Collision Center" sign on the Wyoming property. And a July 2011 photograph had a "Circle's Auto Sales" sign on the Wyoming property.

## B. **Cook sought BZA approval for his use of the properties**

{¶7}    In 2015, Cook's application for a nonconforming-use zoning certificate for the Anna property was denied. After he appealed the initial decision to the BZA, the BZA granted a zoning certificate recognizing a nonconforming use on the Anna property in December 2015.

{¶8}    In 2016, the BZA granted Cook a variance permitting him to place a pole sign at the Wyoming property, which directed potential customers to the Anna property. That decision stated that the Wyoming property was vacant and any future use must conform with the zoning code.

{¶9}    In May 2020, Cook applied for a zoning certificate ("2020 application"). He asked the Village to recognize the Wyoming property's legal nonconforming use and requested to erect a fence for the purpose of storing vehicles on the Wyoming property. His application included two 2015 affidavits in which Cook described his business and the business that had occupied both the Anna and Wyoming properties before he purchased the parcels, and the 2015 BZA decision finding a legal nonconforming use existed on the Anna property. His 2020 application included a sketch with his "proposed site plan."

{¶10}    Although the sketch provided in the record by the Village was too blurry to read Cook's plans, the 2020 affidavit that he submitted with his BZA appeal stated that he had been using, and planned to continue using, the Wyoming property for automobile repairs and temporary storage for vehicles awaiting repair.

{¶11}    The Village denied Cook's application. Cook appealed the decision to the BZA in June 2020.

4

<u>BZA denied Cook's request to recognize the Wyoming property as a legal nonconforming use</u>

{¶12}   In October 2021, the BZA heard Cook's appeal of the Village's denial of his 2020 application. Cook submitted the following evidence in support of his applications:

- A 2014 Department of Commerce report stating that the Wyoming property had "been a service station that operated circa 1940s, became a car lot business from approximately the mid 1950's [sic] to present. Presently, the subject site is a blacktop lot with an active auto repair business on the southeast corner of the lot."

- Hamilton County Auditor's records showing that the Wyoming and Anna properties had been owned and transferred in common since 1955 and that the owners before Cook were Joe and Geneva Burton, who had owned the parcels from 1986 to 2015, and defining the "land use" at the Wyoming property "454 - Automobile Sales and Service."

- A certificate of occupancy stating that Lockland Collision Center operated at the Anna property beginning around 2003, along with the Village's August 2009 Google Street View photograph of the Wyoming property, which showed a Lockland Collision Center sign.

- The Village's July 2011 Google Street View photograph of the Wyoming property, which showed a Circle's Auto Sales sign.

- Larry Reynolds's affidavits. Reynolds, who had leased the Wyoming property from the Burtons and operated Larry's Body Shop on the Wyoming property, swore that (1) Suhu Suhu's Car Sales sold used cars and performed general automobile repairs on the Wyoming Parcel from

2012 or earlier until July 2013, and (2) Larry's Body Shop, an automobile repair and body shop business, operated on the Wyoming property from July 2013 until June 2015.

- Affidavits provided by Cook related to previous zoning requests.

- Cooks's 2020 affidavit and testimony at the BZA hearing. In his affidavit, Cook testified that he was a lifelong resident of the Village; the Wyoming property had always been used for automobile repair and automobile body work, as well as automobile sales; he bought the Wyoming property based on those prior uses because he intended to continue those uses; since July 2015, Cook continually had operated his automobile repair business on the Wyoming and Anna properties; and his business on the Wyoming property includes both automobile repair in the garage bays located on the Wyoming property and temporary storage of vehicles awaiting repair.

{¶13} The Village's evidence against issuing the zoning certificate and variance consisted of 1.) Google photographs from 2009 and 2011; 2.) Google photographs from August 2015, 2016, and 2019, after Cook had purchased the parcels and began operating his business, and 3.) Village administrator Krista Blum's testimony.

{¶14} Blum testified that she had lived in the Village her entire life and that the Google photographs from 2009, 2011, and 2016 accurately reflected the "lack of parking" during those years. But when questioned by Cook's counsel, Blum confirmed that the July 2011 photograph showed vehicles parked on the Wyoming property and that none of the photographs showed the parking lot was barricaded. Though she did

think that there was "some sort of chain" blocking the lot, she did not know the purpose of the chain. Blum also testified that the facts in a letter from the Village's counsel were accurate. That letter, relying upon the 2009 and 2011 photos, stated that the Wyoming property was vacant and made legal conclusions about Cook's and Reynolds's relative uses of the property.

{¶15} In response to Cook's counsel's questions, Blum confirmed that other than her testimony and the Google photographs, there was no evidence showing how the Wyoming property was used and, "I don't think [the Wyoming property] was used for [auto repair]. So, I do believe from my perspective that that use was abandoned on this lot and it wasn't used for that purpose."

{¶16} The BZA denied Cook's application, finding that the Wyoming property "had long been abandoned prior to the adoption of the RO zoning on" the Wyoming property. The decision stated:

> The [BZA] also received Exhibits 1 through 9 provided by the Village. [Cook] offered no exhibits, but the Board did receive and consider a brief submitted by [Cook's counsel] prior to the hearing.
>
> The Appellant failed to meet his burden of proof and did not overcome the testimony of [Blum], a life-long resident of the Village of Lockland, that the use of the [Wyoming] property for the parking of cars waiting for automobile repair had long been abandoned prior to the adoption of the RO zoning on the property. Mr. Cook offered no testimony to contradict that and no explanation for why, knowing the Village's position since 2015, he failed repeatedly to make a case for the nonconforming use [the Wyoming property] until 2020.

7

The trial court affirmed the BZA's decision

**{¶17}** After briefing and oral argument, the magistrate issued a decision affirming the BZA's decision. He noted that the BZA's written decision rested "solely on the testimony of [Blum]" and that Cook was aware that the automobile-repair use at the Wyoming property had been abandoned long before he purchased the parcels. The magistrate's decision stated:

> While the December 17, 2015 decision does not mention, much less define the permitted usage of the Wyoming Avenue Property, the August 18, 2016 decision clearly states any previous non-conforming grandfathered use has been abandoned. By receiving the 2015 and 2016 decisions from the BZA, the Appellant had notice that any previous nonconforming use of 336 W. Wyoming had been abandoned. Any nonconforming use of 336 W. Wyoming between 2015 and 2021 was an illegal use and cannot be considered as a continuing use of the property so as to warrant non-abandonment of a nonconforming use.

**{¶18}** Cook objected to the magistrate's decision, arguing that the magistrate's decision did not reach the merits because the Village failed to meet its burden under Ohio law to prove Cook's manifest intent to abandon the nonconforming use. The trial court adopted and affirmed the magistrate's decision with no further analysis. Cook now appeals.

**Law and Analysis**

**{¶19}** In his sole assignment of error, Cook argues that the trial court failed to apply the appropriate test to determine whether a legal, nonconforming use was abandoned. Cook contends that case law dictates that the trial court was to apply the

8

"abandonment" test, while the Village argues that R.C. 713.15 clearly states that the test is whether the owner voluntarily discontinued the use.

### A. Standard of Review

{¶20} In administrative appeals, the trial court determines whether the administrative decision was "unconstitutional, illegal, arbitrary, capricious, unreasonable, or unsupported by the preponderance of substantial, reliable, and probative evidence on the whole record.*" State ex rel. Rimroth v. City of Harrison*, 1st Dist. Hamilton No. C-180691, 2020-Ohio-367, ¶ 6, quoting R.C. 2506.04. The court makes factual and legal determinations and can receive new evidence. *Id.*, citing *Cleveland Clinic Found. v. Bd. of Zoning Appeals*, 141 Ohio St.3d 318, 2014-Ohio-4809, 23 N.E.3d 1161, ¶ 23, quoting *Kisil v. Sandusky*, 12 Ohio St.3d 30, 34, 465 N.E.2d 848 (1984).

{¶21} Appellate courts' authority is limited to reviewing the common pleas court's decision on "questions of law." *Id.*, citing *Cleveland Clinic Found.* at ¶ 25, citing *Henley v. Youngstown Bd. of Zoning Appeals*, 90 Ohio St.3d 142, 147, 735 N.E.2d 433 (2000). This court may reverse a trial court's judgment in a zoning appeal when "the trial court 'errs in its application or interpretation of the law or its decision is unsupported by a preponderance of the evidence as a matter of law.'" *Village of Terrace Park v. Anderson Twp. Bd. of Zoning Appeals*, 2015-Ohio-4602, 48 N.E.3d 143, ¶ 14 (1st Dist.), quoting *Cleveland Clinic Found.* at ¶ 30.

### B. Municipalities must permit the use of land that existed before enactment of a zoning ordinance

{¶22} The Fourteenth Amendment to the United States Constitution and Article I, Section 16 of the Ohio Constitution provide that no person shall be deprived of life, liberty, or property without due process of law.

9

{¶23} Nonconforming uses are those uses of property that existed when a zoning ordinance was enacted, but do not conform to a subsequently-enacted zoning ordinance. *Aluminum Smelting & Refining Co. Inc. v. Denmark Twp. Zoning Bd. of Zoning Appeals*, 11th Dist. Ashtabula No. 2001-A-0050, 2002-Ohio-6690, ¶ 14.

{¶24} "Zoning ordinances contemplate the gradual elimination of nonconforming uses within a zoned area, and, where an ordinance accomplishes such a result without depriving a property owner of a vested property right, it is generally held to be constitutional." *State ex rel. Sunset Estate Properties*, *L.L.C. v. Village of Lodi*, 142 Ohio St.3d 351, 2015-Ohio-790, 30 N.E.3d 934, ¶ 10, quoting *City of Akron v. Chapman*, 160 Ohio St. 382, 386, 116 N.E.2d 697 (1953).

{¶25} But the authority of state and local governments to regulate land use is not unfettered. Landowners have a right to use their property "in a lawful business and in a manner which does not constitute a nuisance and which was lawful at the time such business was established * * *." *Pschesang v. Village of Terrace Park*, 5 Ohio St.3d 47, 48, 448 N.E.2d 1164 (1983), quoting *Chapman* at paragraph two of the syllabus. Indeed, the right to use one's property in a manner that was lawful when that use began is protected by both the United States Constitution, Article XIV, Section 1, and the Ohio Constitution, Article I, Section 16, which provide that that no person shall be deprived of property without due process of law. *State ex rel. Sunset Estate Properties, L.L.C.*, 142 Ohio St.3d 351, 2015-Ohio-790, 30 N.E.3d 934, at ¶ 11, quoting *Chapman* at paragraph two of the syllabus.

{¶26} A party asserting a legal nonconforming use of property bears the initial burden to prove that the use existed at some point before the zoning ordinance was enacted. *Verbillion v. Enon Sand & Gravel, LLC*, 2021-Ohio-3850, 180 N.E.3d 638, ¶

120 (2d Dist.). To prove a nonconforming use, the party must show 1.) that the use existed before the zoning ordinance was enacted, and 2.) that the use was lawful when it began. *Id.* Ownership changes do not affect the right because the right to use land in a particular way attaches to the land itself. *Id.* Once the property owner has met its initial burden to show a nonconforming use, the burden shifts to the municipality to show that the use had been voluntarily discontinued. *See State v. Killeen*, 9th Dist. Lorain No. 18CA011326, 2019-Ohio-2264, ¶ 12 (discussing nonconforming use burden-shifting framework in the context of a criminal violation); *see Janson v. Beninato*, 11th Dist. Ashtabula Nos. 2015-A-0039 and 2015-A-0040, 2016-Ohio-2796, ¶ 25.

**{¶27}** The trial court did not explicitly determine whether Cook met his burden to establish that an automobile-repair business had existed on the Wyoming property before the Village enacted the April 2012 zoning ordinance. Instead, it analyzed whether the use had been abandoned.

**{¶28}** On appeal, the Village cites the law involving Cook's initial burden to show a nonconforming use but does not make any argument that Cook failed to meet that burden. Therefore, the Village waived any argument regarding that issue. *Rowitz v. McClain*, 2019-Ohio-5438, 138 N.E.3d 1241, ¶ 23 (10th Dist.). Accordingly, we hold that Cook met his initial burden to show a nonconforming use.

### C.    The trial court misapplied the law by placing the burden on Cook to show that his proposed use was legal

**{¶29}** Property owners retain the right to continue specific nonconforming uses of their property unless that use "is voluntarily discontinued." R.C. 519.19. Under Lockland's zoning ordinances, a one-year period of abandonment is sufficient to terminate the right to continue a nonconforming use of property.

11

**{¶30}** The party asserting that a "use was voluntarily discontinued bears the burden, by a preponderance of the evidence, of demonstrating" that the use was voluntarily abandoned. *Janson*, 11th Dist. Ashtabula Nos. 2015-A-0039 and 2015-A-0040, 2016-Ohio-2796, at ¶ 25; *see Aluminum Smelting & Refining Co.*, 11th Dist. Ashtabula No. 2001-A-0050, 2002-Ohio-6690, at ¶ 15; *Sunset Estate Properties, LLC*, 9th Dist. Medina No. 12CA0023-M, 2013-Ohio-4973, at ¶ 15; *Village of New Richmond v. Painter*, 12th Dist. Clermont No. CA2002-10-080, 2003-Ohio-3871, ¶ 9.

**{¶31}** The BZA decision stated that Cook "failed to meet his burden of proof and did not overcome the testimony of [Blum] * * * that the use of the [Wyoming] property for the parking of cars waiting for automobile repair had long been abandoned prior to the adoption of the RO zoning on the property." This was an erroneous application of law because it improperly shifted the burden to Cook to disprove voluntary discontinuation of the land use, rather than placing the burden on the Village to show voluntary discontinuation of the use. The trial court's judgment did not correct this erroneous application of the law.

**{¶32}** Therefore, we hold that the trial court erroneously applied the law when it placed on Cook the burden to disprove voluntary discontinuation of the legal nonconforming use.

### D.   The trial court failed to consider Cook's evidence

**{¶33}** Attached to his BZA appeal involving his 2020 application for a zoning certificate, Cook submitted the following evidence:

- Department of Commerce's finding that previous uses at the Wyoming property were automobile-related businesses;

- Hamilton County Auditor's records showing that the Wyoming property had been transferred in common since 1955, had been owned by the Burtons from 1986-2015, and the use was deemed "454 Automobile Sales and Service";

- The certificate of occupancy reflecting that Lockland Collision Center operated at the Wyoming property beginning around 2003, and the Village's 2009 Google photo showing a sign for that business;

- The Village's 2011 Google photo showing a sign for Circle's Auto Sales at the Wyoming property;

- Larry Renyolds's sworn affidavits averring that a car sales business operated businesses on the Wyoming and Anna properties before Reynolds took over the parcels in 2012 and that Reynolds had operated an automobile repair and body shop business on both parcels from 2012 until June 2015;

- Cook's affidavit averring his personal knowledge of the historical use of the parcels for automobile-oriented businesses and his intent to continue such use.

{¶34} Moreover, Cook testified at the BZA hearing that on the property he had been "repairing cars;" before he purchased the properties, the previous occupant "always repaired cars and [ran] a body shop;" the properties' use was "always" for some vehicular use; and Cook purchased the parcels to continue that use.

{¶35} In contrast, the Village's evidence consisted of Google photographs of the property—snapshots of single moments in time, rather than evidence showing ongoing activity (or the lack thereof) on the Wyoming property—and the Village

administrator's testimony at the hearing: "So, I do believe from my perspective that that use was abandoned on this lot and it wasn't used for that purpose." The Village provided no further evidence.[1]

{¶36} The BZA's decision stated that while it had received nine exhibits provided by the Village, "[Cook] offered no exhibits."

{¶37} The BZA's finding that Cook had offered no exhibits was a legal error. He offered multiple exhibits as attachments to his appeal. The BZA failed to consider the substantial evidence that Cook provided to disprove abandonment of the Wyoming property's use related to automobile repair. And the trial court did not correct the BZA's error. Therefore, we hold that the trial court erred as a matter of law by failing to consider Cook's evidence.

### E.     Trial courts cannot base decisions on improper factors

{¶38} The BZA decision denying Cook's request to recognize the legal nonconforming use on the Wyoming property pointed to instances in which the Village declared its position that the Wyoming property's use as an automobile-repair business had been abandoned, noting that "Cook offered no * * * explanation for why, knowing the Village's position since 2015, he failed repeatedly to make a case for the nonconforming use of [the Wyoming property] until 2020."

{¶39} The magistrate's decision, which was adopted by the trial court, stated:

While the Board's written decision rests solely on the testimony of Ms. [Blum], the record submitted with this appeal shows that Cook was aware that [the Wyoming property] auto sale use had been abandoned

---

[1] The Village's exhibits also included a letter from its attorney, paperwork submitted by Cook's previous attorney, and minutes from Village meetings, but none of these documents provided evidence of a prior use of the property or of voluntary discontinuation of that use.

long before his 2015 purchase of the property.

While the December 17, 2015, decision does not mention, much less define the permitted usage of the Wyoming Avenue Property, the August 18, 2016 [BZA decision] clearly states any previous non-conforming grandfathered use has been abandoned. By receiving the 2015 and 2016 decisions from the BZA, the Appellant had notice that any previous nonconforming use of 336 W. Wyoming had been abandoned.

{¶40} The August 2016 BZA decision involved one issue—whether Cook could obtain a variance to put a sign on the Wyoming property directing customers to the Anna property. Although the "procedural facts" stated that the Wyoming property was vacant, any use had been abandoned, and any future use had to conform with the zoning code, nothing in that decision suggests that the parties litigated whether the Wyoming property's previous use for automobile repair had been abandoned.

{¶41} It is unclear whether the trial court based its decision, in part, on Cook receiving notice of the Village's position or whether it raises notice in dicta. But to the extent that the trial court based its decision on Cook having notice of the Village's position, it misapplied the law. The only issue for the trial court to decide is whether the Village met its burden to show that the nonconforming use had been abandoned.

{¶42} Because the trial court applied the incorrect law and failed to consider the plethora of evidence that Cook submitted, we sustain Cook's sole assignment of error and remand the cause to the trial court to consider Cook's appeal consistent with this opinion. On remand, the trial court should only consider whether the Village met its burden to prove voluntary discontinuation of the nonconforming use.

15

## Conclusion

{¶43} The trial court improperly placed on Cook the burden to disprove abandonment of the nonconforming use and failed to consider the substantial evidence offered by Cook. Because the trial court erred as a matter of law, we reverse its judgment and remand this cause to the trial court for proceedings not inconsistent with this opinion.

Judgment reversed and cause remanded.

ZAYAS, P.J., and KINSLEY, J., concur.

Please note:

The court has recorded its entry on the date of the release of this opinion.