[Cite as *Smith v. Warren Cty. Rural Zoning Bd. of Zoning Appeals*, 2019-Ohio-1590.]

IN THE COURT OF APPEALS

TWELFTH APPELLATE DISTRICT OF OHIO

WARREN COUNTY

| | | |
|---|---|---|
| NORMAN B. SMITH, | : | |
| Appellant, | : | CASE NO. CA2018-07-078 |
| | : | O P I N I O N |
| - vs - | | 4/29/2019 |
| | : | |
| WARREN COUNTY RURAL ZONING BOARD OF ZONING APPEALS, | : | |
| | : | |
| Appellee. | : | |

APPEAL FROM WARREN COUNTY COURT OF COMMON PLEAS
Case No. 17-CV-90007

Thomas G. Eagle, 3400 North State Route 741, Lebanon, Ohio 45036 for appellant

David P. Fornshell, Warren County Prosecuting Attorney, Adam M. Nice, 520 Justice Drive, Lebanon, Ohio 45036 for appellee

**S. POWELL, J.**

{¶ 1}   Appellant, Norman B. Smith, appeals the decision of the Warren County Court of Common Pleas affirming the decision of appellee, the Warren County Rural Zoning Board of Zoning Appeals ("BZA"), denying his application for a variance to keep in place a non-conforming fence he erected on his property.  For the reasons outlined below, we affirm the common pleas court's decision.

**The Nonconforming Fence**

{¶ 2}   This case originates from the BZA's decision denying Smith's application for

a variance from the Warren County Rural Zoning Code ("WCRZC"). As noted above, Smith's application requested a variance for a nonconforming fence he erected on his property. A variance "authorizes a landowner to establish or maintain a use which is prohibited by zoning regulations." *Nunamaker v. Board of Zoning Appeals*, 2 Ohio St.3d 115, 118 (1982). The section of the WCRZC at issue in this case, Section 3.102.6(A), prohibits any fence from standing greater than four feet in a front yard.

**Smith's Application for a Variance**

{¶ 3} The nonconforming fence at issue was built by Smith in 2016. On May 18, 2017, approximately one-and-one-half years after the fence was completed, Smith applied for a variance. The fence is a wooden privacy fence that stands between two to eight feet higher than what is permitted by the WCRZC. The fence was built on the shared property line between Smith's property and the neighboring property to the east. There is no dispute that the neighboring property to the east is owned by Smith's brother.

**BZA's Hearing on Smith's Variance Application**

{¶ 4} On June 20, 2017, the BZA held a hearing on Smith's application for a variance. Although notice was provided to all necessary property owners, Smith was the only property owner who appeared at the hearing. The following is a summary of Smith's testimony provided to the BZA.

{¶ 5} Smith is the owner of the subject property having received the property as a gift from his father "[c]oming on 30 years." Smith's brother is his next-door neighbor. Smith has had problems with his brother for several years. These problems originated from "property line issues." This includes Smith's brother pouring a concrete driveway that encroached onto a portion of Smith's property. Smith's brother also installed "an effluent sewer pipe where there wasn't easements for that." Although originally relatively benign, after their father's passing in 2009, Smith's troubles with his brother grew more

confrontational. This ultimately resulted in Smith nearly calling the police after his brother trespassed onto his property and threatened to "do bodily harm."

{¶ 6} In hopes of alleviating any future problems with his brother, Smith initially erected a wire fence between the two properties. But, for reasons unknown, Smith decided to remove that fence and erect instead the nonconforming fence at issue. This fence, as noted above, is a wooden privacy fence that stands between two to eight feet higher than what is permitted by the WCRZC. Smith described the fence as follows:

> It's twelve foot at – I can't even remember the measurements here. There's 80 feet from the front of the house, that's 12 foot. And the rest is six up to the road, but it's pulled back – it's set back from the road. * * * I'm wanting to say it's – I want to say it's 50 feet.

Smith built the fence after applying for and receiving a building permit. And, as Smith testified, "they gave me – signed off on the building permit and looked it over and they were happy with it."

{¶ 7} After the nonconforming fence was erected, Smith testified there has "been peace" between him and his brother. This, according to Smith's testimony, has increased Smith's enjoyment in his property to where "[i]t's like living in a new house." Smith also testified the fence has stopped his brother from spying, harassing, and otherwise trespassing onto his property. Therefore, according to Smith, the fence has "made total peace" between the two.

{¶ 8} Describing this "peace," Smith testified:

> But you know, all the activities from [my brother's house] and all the activities I have here is constant, you know, constantly everybody knows what everybody's doing. And like I said, since I put that up, it's – I mean I had issues one time that if I have loud music or something, I'd get yelled at over that or he'd turn some lawnmower on and leave it to be louder, I mean just silly things like that. And it's just made everything so much peaceful, just took all that away. You know, out of sight, out of mind.

* * *

And it's just taken everything away, it's just out of sight out of mind. If you go out there and work in the garage, nobody can come out and decide to do something to pester you while you're out there. It's just – it's just totally different now. It's just like living in a new house, to me. It's created a lot of peace.

{¶ 9} Concluding, when asked why he decided to erect the nonconforming fence at issue instead of simply planting trees or installing a berm between his brother's property, both of which would have complied with WCRZC requirements, Smith testified it was because "nothing grows fast I know. So yeah, this was in my mind a quick, you know, way of easing the situation."

**BZA's Decision Denying Smith's Variance Application**

{¶ 10} After closing the hearing to confer on the matter in private, the BZA reopened the hearing and issued a two-to-one decision denying Smith's application for a variance. The BZA thereafter issued a written decision setting forth its findings of fact and conclusions of law. As part of that decision, the BZA properly noted that Smith had testified "his need for the variance was due to a dispute with a neighbor and the fence was to provide screening to insulate him from said neighbor."

{¶ 11} The BZA then stated, in pertinent part, the following:

During deliberations, the BZA discussed the applicable law. Pursuant to Ohio Revised Code Section 303.14, the burden of proof is on the Applicant seeking the variance from **3.102.6(A)** to prove:

(i) that granting a variance will not be contrary to the public interest; and,

(ii) that literal enforcement of the specific section of the Zoning Resolution would result in unnecessary hardship to the Applicant; and,

(iii) that the spirit of the Zoning Resolution will not be violated if a variance is granted;

- 4 -

(iv) and, substantial justice will be done if a variance is granted.

**Elements were not satisfied.**

And, during deliberations the BZA discussed whether the need for the variance was self-created by the Application (sic). The need for the variance was self-created and the BZA determined the applicant has other alternatives to screen himself from the nuisance he is protecting himself from. Landscaping and/or a berm or both are allowed under the Warren County Rural Zoning Code in accordance with Article 3 Chapter 4.

(Bold text sic.)

{¶ 12} Concluding, the BZA noted that after applying the applicable law to the testimony and evidence presented that it had "voted 2 to 1 to deny the variance." (Underlined text sic.)

### Smith's Appeal to the Common Pleas Court

{¶ 13} On July 17, 2017, Smith appealed the BZA's decision to the common pleas court in accordance with R.C. Chapter 2506. A hearing on the matter was held before a common pleas court magistrate on November 20, 2017. Smith did not testify at this hearing. The magistrate instead heard arguments from Smith's counsel and counsel for the BZA. Following this hearing, the magistrate took the matter under advisement and notified the parties that it would issue a decision in due course.

{¶ 14} Several months later, on March 5, 2018, the magistrate issued a decision affirming the BZA's decision denying Smith's application for a variance. In so holding, the magistrate found Smith's "hardship does not relate to his land, but rather to his relationship with his brother, a purely personal matter. A variance is an inappropriate remedy for [Smith's] problem."

{¶ 15} On March 16, 2018, Smith filed timely objections to the magistrate's decision. The common pleas court, however, denied Smith's objections, thereby affirming and

adopting the magistrate's decision in its entirety.[1]  The common pleas court reached this decision upon finding:

> In this case, the BZA determined that Mr. Smith did not establish that a special condition relating to his property would result in an unnecessary hardship if the variance was not granted. Specifically, the BZA found that the need for the variance was self-created and that alternatives existed to alleviate his struggles with his neighbor brother, such as planting a tree border.  The Court finds that the reasons cited by the BZA for denying the variance were not arbitrary, unreasonable, capricious, or unsupported by the preponderance of the evidence.  Further, the Court finds that the magistrate did not err in affirming the BZA decision denying the variance.

### Appeal

{¶ 16} Smith now appeals from the common pleas court's decision, raising a single assignment of error for review.  In his single assignment of error, Smith argues the common pleas court erred by affirming the BZA's "denial of a variance for fence height."  After a full and thorough review of the record, and finding no merit to any of the arguments raised by Smith herein, we affirm the common pleas court's decision.

### Standard of Review

{¶ 17} R.C. Chapter 2506 governs the standards applied to appeals of administrative agency decisions.  *Hutchinson v. Wayne Twp. Bd. of Zoning Appeals*, 12th Dist. Butler No. CA2012-02-032, 2012-Ohio-4103, ¶ 14.  Pursuant to R.C. 2506.04, a common pleas court reviewing an administrative appeal "'weighs the evidence in the whole record and determines whether the administrative order is unconstitutional, illegal, arbitrary, capricious, unreasonable, or unsupported by the preponderance of the substantial, reliable, and probative evidence.'"  *Bingham v. Wilmington Bd. of Zoning Appeals*, 12th Dist. Clinton No.

---

1. We note that the common pleas court's decision stated that Section 3.102.6(A) of the WCRZC "provides that the height of a fence shall not exceed four (4) feet in the front yard and shall not exceed six (6) feet in the side or back yards."  However, a review of the WCRZC shows that Section 3.102.6(A) merely prohibits any fence from standing greater than four feet in a front yard without any reference to the height requirements for a fence in a side or back yard.  The magistrate stated as much in its decision at fn. 1.

CA2012-05-012, 2013-Ohio-61, ¶ 6, quoting *Key-Ads, Inc. v. Warren Cty. Bd. of Commrs.*, 12th Dist. Warren No. CA2007-06-085, 2008-Ohio-1474, ¶ 7. A board of zoning appeals' decision is presumed to be valid and the burden is upon the party contesting the board's determination to prove otherwise. *Terrace Park v. Anderson Twp. Bd. of Zoning Appeals*, 1st Dist. Hamilton Nos. C-140741 and C-140745, 2015-Ohio-4602, ¶ 13.

{¶ 18} On the other hand, "'[a]n appeal to the court of appeals, pursuant to R.C. 2506.04, is more limited in scope.'" *Queen v. Union Twp. Bd. of Zoning Appeals*, 12th Dist. Fayette No. CA2015-05-011, 2016-Ohio-161, ¶ 13, quoting *Kisil v. Sandusky*, 12 Ohio St.3d 30, 34 (1984). "[T]his court on review is without jurisdiction to substitute its judgment for that of the [common pleas] court." *In re Lehman*, 10th Dist. Franklin No. 77AP-340, 1977 Ohio App. LEXIS 7449, *4-5 (Dec. 27, 1977). "[T]his court must affirm the common pleas court's decision unless it finds, as a matter of law, that the lower court's decision was not supported by a preponderance of reliable, probative, and substantial evidence." *Taylor v. Wayne Twp. Bd. of Trustees*, 12th Dist. Butler No. CA2008-02-032, 2009-Ohio-193, ¶10. But, unlike the common pleas court, this court "does not weigh the evidence or determine questions of fact." *Abdalla Ents. v. Liberty Twp. Bd. of Trustees*, 196 Ohio App.3d 204, 2011-Ohio-5085, ¶ 18 (12th Dist.).

### BZA's Authority to Issue a Variance

{¶ 19} R.C. 303.14 "sets forth the powers of a county board of zoning appeals." *Homes, Inc. v. Butler Cty. Bd. of Zoning Appeals*, 35 Ohio App.3d 161, 165 (12th. Dist.1987). Pursuant to that statute, and as relevant here, the BZA may authorize a variance from the terms of the WCRZC "as will not be contrary to the public interest, where, owing to special conditions, a literal enforcement of the resolution will result in unnecessary hardship, and so that the spirit of the resolution shall be observed and substantial justice

done[.]"[2]   This sets forth a four-prong inquiry that grants the BZA authority to issue a variance only if:

> (1) the variance will not be contrary to the public interest;
>
> (2) where, owing to special conditions, literal enforcement of the resolution will result in unnecessary hardship; and so
>
> (3) that the spirit of the zoning resolution shall be observed if the variance is granted; and
>
> (4) substantial justice shall be done by granting the variance.

{¶ 20} This is the same standard set forth by Section 1.307.5 of the WCRZC. Specifically, as that section of the WCRZC states:

> **Review Criteria:** The BZA shall not authorize approval of variance(s) unless the Board documents Findings of Fact based on the evidence presented upon appeal.  The standards for granting such variance from the terms of the Zoning Code to be considered are as follows:
>
> (A) That granting a variance will not be contrary to the public interest;
>
> (B) Where, owing to special conditions, a literal enforcement of the resolution will result in an unnecessary hardship;
>
> (C) That the spirit of the zoning resolution will be observed if a variance is granted; and,
>
> (D) Substantial justice will be done if a variance is granted.

A board of zoning appeal's decision to grant a variance is dependent on the facts of each case. *Kratzer v. Westfield Twp.*, 9th Dist. Medina No. 14CA0069-M, 2016-Ohio-3378, ¶ 12.

### "Unnecessary Hardship" or "Practical Difficulties" Standard

{¶ 21} Prior to addressing the merits of Smith's appeal, we note that Smith claims

---

2. The language found in R.C. 303.14(B) addressing a county board of zoning appeal's authority to grant a variance is identical to the language found in R.C. 519.14(B) regarding the authority of a township board of zoning appeals to grant the same.  Therefore, due to the identical language found in both R.C. 303.14(B) and 519.14(B), this court will cite as authority caselaw addressing both statutes with equal authoritative weight.

the standard set forth in R.C. 303.14(B) requiring an "unnecessary hardship" does not apply to this case. Smith instead argues that the lower "practical difficulties" standard applies. We have rejected this argument previously and decline Smith's invitation to revisit the issue here. *See Smith v. Warren Cty. Rural Zoning Bd. of Appeals*, 12th Dist. Warren No. CA2007-05-058, 2008-Ohio-2910, ¶ 14, citing *Dsuban v. Union Twp. Bd. of Zoning Appeals*, 140 Ohio App.3d 602, 608-609 (12th Dist.2000) (analyzing the analogous statutory provision outlining the powers of a township board of zoning appeals); *see also Thompson v. Schwab*, 12th Dist. Butler No. CA2001-08-196, 2002 Ohio App. LEXIS 1990, *2-3 (common pleas court applied improper "practical difficulties" standard rather than "unnecessary hardship" standard in reviewing a township board of zoning appeals' decision denying a variance).

{¶ 22} And, regardless of what Smith argued to the common pleas court, our research indicates that this court is not alone in its holding. *See Mercer Cty. Bd. of Zoning Appeals*, 2008-Ohio-2116 at ¶ 17 ("we must reject the argument that the lesser 'practical difficulty' standard applies to area variances because the plain language of R.C. 303.14(B) provides otherwise"); *see also In re Appeal of American Outdoor Advertising, LLC.*, 3d Dist. Union No. 14-02-27, 2003-Ohio-1820, ¶ 9 (applying the analogous statutory provision outlining the powers of a township board of zoning appeals finding "regardless of whether the application in this case was for an area or use variance, the appropriate standard is whether denial of the variance would produce an unnecessary hardship"); *Briggs v. Dinsmore Twp. Bd. of Zoning Appeals*, 161 Ohio App.3d 704, 2005-Ohio-3077, ¶ (3d Dist.) (common pleas court applied improper "practical difficulties" standard rather than the "unnecessary hardship" standard in reviewing a township board of zoning appeals' decision denying a variance).

**Smith's Single Assignment of Error and Relevant Supporting Arguments**

{¶ 23} Smith raises a variety of issues in his single assignment of error. But, although separated into a total of seven different arguments, these issues can be stated more simply as follows:

> 1. The common pleas court erred by affirming the BZA's decision by relying on issues that were not previously raised or argued before the BZA or the common pleas court, thereby violating his right to due process.
>
> 2. The common pleas court erred by affirming the BZA's decision where the BZA's decision was based on "unlawful grounds" that went beyond the statutory authorization set forth by R.C. 303.14(B) and Section 1.307.5 of the WCRZC.
>
> 3. The common pleas court erred by affirming the BZA's decision where Smith provided sufficient evidence that the literal enforcement of Section 3.102.6(A) of the WCRZR would result in an "unnecessary hardship."

These three issues, coupled with Smith's relevant supporting arguments raised herein, are addressed more fully below.

**Denying Smith's Variance Application on Issues Not Previously Raised**

{¶ 24} Smith initially argues the common pleas court erred by affirming the BZA's decision by relying on issues not previously raised or argued before the BZA or the common pleas court; namely, that the "unnecessary hardship" Smith faced was self-created, personal, and a result of his tumultuous relationship with his brother that could have been addressed through some alternative means, such as planting a tree border or installing a berm. Therefore, according to Smith, the common pleas court's "sua sponte" decision was improper and violated his right to due process. We disagree.

{¶ 25} A simple review of the record proves Smith's claim false. That is, stated differently, the common pleas court's decision was based on issues that were raised and argued before both the BZA and the common pleas court. For instance, as it relates to the hearing on Smith's variance application before the BZA, we note the following exchange

- 10 -

between a BZA board member, Smith, and Smith's counsel:

> [BZA BOARD MEMBER]: So your claim would be that your hardship is –
>
> [SMITH'S COUNSEL]: The hardship – be more specific, what kind of problems did you have with your brother before you had the privacy fence?
>
> MR. SMITH: You know, there was just a lot of issues of privacy, we didn't have any. And then when my parents passed away, I – the reason this started was I asked him to move a section of concrete and that effluent sewer pipe being the easements for the back of the property. If I get my house done, I'm trying to work on it to sell, I've got to have a straight [boundary line].

{¶ 26} This exchange continued as follows:

> [SMITH'S COUNSEL]: Tell them what the hardships were with regard to what problems your brother was causing before you put up the fence?
>
> MR. SMITH: Well, you know, that's the reason I made a move is he started on me all the time with, you know, argumentative behavior over that and then threats to come do bodily harm, and that kind of thing so I just – I went and put a fence up.

{¶ 27} This exchange concluded as follows:

> [SMITH'S COUNSEL]: Has he done anything that would you describe to the Board as like spying or harassing activities and things like that that the fence prevented?
>
> MR. SMITH: It's prevented all that. I mean, you know, you had no privacy, any kind of personal – people come in and, you know, everything. It's just – it's all created a whole new atmosphere. It's totally private. I mean –
>
> [SMITH'S COUNSEL]: Were the police called from time to time?
>
> MR. SMITH: I could have called the police but it was my brother. And I just – and I tried to resolve and tell him to go home. I got him all calmed down and left. But it's just – you know, the attitude sometimes is to go the wrong way instead of talking, so – and it's made total peace.

{¶ 28} Also illustrative is Smith's subsequent statement to the BZA describing the impact the nonconforming fence has had on his relationship with his brother. As Smith

- 11 -

testified:

> But you know, all the activities from this house and all the activities I have here is constant, you know, constantly everybody knows what everybody's doing. And like I said, since I put that up, it's – I mean I had issues one time that if I have loud music or something, I'd get yelled at over that or he'd turn some lawnmower on and leave it to be louder, I mean just silly things like that. And it's just made everything so much peaceful, just took all that away. You know, out of sight, out of mind.

{¶ 29} Smith later testified that he thought about simply planting trees between he and his brother's property but that "nothing grows fast I know. So yeah, this was in my mind a quick, you know, way of easing the situation."

{¶ 30} Smith's statements at the BZA hearing clearly show that the issues the BZA relied upon in denying the variance – that the "unnecessary hardship" Smith faced was self-created, personal, and a result of his tumultuous relationship with his brother that could have been addressed through some alternative means, such as planting a tree border or installing a berm – were raised and argued extensively before the BZA. Smith's claim otherwise is incorrect and not supported by the record.

{¶ 31} The same is true regarding Smith's claim that these same issues were not raised and argued before the common pleas court. As Smith's counsel stated at the hearing held before the common pleas court magistrate:[3]

> 1. So, I think, okay, then what's the legal reasoning for prohibiting the man from having a fence that's a little bit higher that has for the whole time it's been up, going on two years now, I guess, kept the peace between him and his neighbor, who used to have all kinds of trouble[?]
>
> 2. The [literal] enforcement of the code, does result in the hardship, that is he has a fence, that doesn't keep the peace between him and his neighbor and this one does[.]
>
> 3. [T]he hardship was the fact that he's got a neighbor who drove

---

3. This court created a numerical list to separate the relevant statements offered by Smith's counsel for clarity and ease of readability.

him crazy and the fence stopped that. Put a complete stop to it.
Now they live in peace in the neighborhood.

{¶ 32} The magistrate's own statements indicate it also found early on that the "unnecessary hardship" alleged by Smith was self-created and personal to him rather than the unique conditions peculiar to the land itself. As the magistrate stated, "Mr. Smith's hardship in this case is the bad behavior of his brother, who is his next door neighbor. Some third person, causing him a problem." To which Smith's counsel responded and agreed that, "As Your Honor pointed out, it's not the existence of the fence that creates the substantial hardship, it's the fact of the bad neighbor[.]" Smith's counsel thereafter concluded by stating, "This is a fence put up to be nice, to try to keep peace" between Smith and his brother.

{¶ 33} Just like Smith's own statements at the hearing before the BZA, the statements of Smith's counsel at the hearing held before the common pleas court magistrate also show the issues the BZA relied upon in denying the variance were raised and argued before the common pleas court. Smith's claim otherwise is once again incorrect and not supported by the record. Therefore, because the record does not support Smith's claim, we find no merit to Smith's argument that the common pleas court issued a "sua sponte" decision that violated his right to due process.

**"Unlawful Grounds" to Deny Smith's Variance Application**

{¶ 34} Smith next argues the common pleas court's decision was improper since the BZA denied his application on "unlawful grounds" that went beyond the statutory authorization set forth by R.C. 303.14(B) and Section 1.307.5 of the WCRZC. In support, Smith argues the common pleas court's decision must be reversed because the BZA "re-wrote" the Ohio Revised Code and the WCRZC to include an unconstitutional rationale for denying a variance; namely, that a variance can be denied upon finding the alleged

"unnecessary hardship" necessitating the issuance of a variance was self-created and personal to the property owner as opposed to unique conditions peculiar to the land itself.

{¶ 35} Specifically, as Smith argues:

> There is nothing in that Code that limits the rights of a property owner unless there is something "unique," or "personal," or even "irreconcilable" other than by a variance. The writers of the Code omitting those "qualifiers" from the statutory text has to be construed as being on purpose.

Therefore, according to Smith, because "those words are not in the Code applicable here," the common pleas court's decision to affirm the BZA's findings was the "epitome of arbitrariness." We again disagree.

{¶ 36} This court is confounded by Smith's argument. Smith is essentially arguing that the Ohio Revised Code and the WCRZC must set forth in explicit detail under what circumstances the BZA can grant a variance to a property owner. That is, stated differently, Smith argues the Ohio Revised Code and the WCRZC must specifically define under what circumstances an "unnecessary hardship" exists to allow for a variance to be had. But, despite Smith's insistence to the contrary, that is not how the law works.

{¶ 37} Either the Ohio General Assembly or the Warren County Board of County Commissioners could have specifically defined the phrase "unnecessary hardship." Neither did. Under such circumstances, both R.C. 1.42 and the Section 4.102 of the WCRZC mandate that any undefined words and phrases found within the Ohio Revised Code or the WCRZC be given their customary, common, and everyday meaning.

{¶ 38} For instance, pursuant to R.C. 1.42:

> Words and phrases shall be read in context and construed according to the rules of grammar and common usage. Words and phrases that have acquired a technical or particular meaning, whether by legislative definition or otherwise, shall be construed accordingly.

{¶ 39} Similarly, pursuant to Section 4.102 of the WCRZC:

> **TERMS NOT DEFINED:** Terms not defined herein shall have their customary meanings as found in the most recent editions of published dictionaries, including the Webster's New World Dictionary and the American Heritage Dictionary.

(Bold and underlined text sic.)

**{¶ 40}** Citing to R.C. 1.42, the Ohio Supreme Court requires the same. *See Stewart v. Vivian*, 151 Ohio St.3d 574, 2017-Ohio-7526, ¶ 25 ("[t]erms that are undefined in a statute are accorded their common, everyday meaning").

**{¶ 41}** What constitutes a customary, common, and everyday meaning to a statutorily undefined term can be supplied judicially. *See, e.g., Jones v. Geauga Cty. Republican Party Cent. Commt.*, 11th Dist. Geauga No. 2016-G-0056, 2017-Ohio-2930, ¶ 25 ("'[p]ublic business' is not statutorily defined, but has recently been defined by the Ohio Supreme Court as 'the business of the government' or 'those matters over which the public governmental body has supervision, control, jurisdiction or advisory power'"). Such is the case here. *See Springfield Fireworks, Inc. v. Ohio Dept. of Commerce, Div. of State Fire Marshal*, 3d Dist. Allen No. 1-02-51, 2003-Ohio-2030, ¶ 9 ("[w]hile 'unnecessary hardship' has not been defined in relation to R.C. 3743.59, this court has defined the phrase in a case involving the denial of a variance to a township zoning ordinance").

**{¶ 42}** Again, as provided by both R.C. 303.14(B) and Section 1.307.5 of the WCRZC, the BZA has the authority to grant a variance only if:

(1) the variance will not be contrary to the public interest;

(2) where owing to special conditions, literal enforcement of the resolution will result in unnecessary hardship; and so

(3) that the spirit of the zoning resolution shall be observed if the variance is granted; and

(4) substantial justice shall be done by granting the variance.

Therefore, when considering the four-pronged inquiry set forth above, the existence of an

"unnecessary hardship" is a crucial element that must be established by the applicant requesting a variance before the variance can be issued.

{¶ 43} An "'[u]nnecessary hardship' results when it is not economically feasible to put the property to a permitted use under its present zoning classification due to characteristics unique to the property." *Chafe Towing v. Springfield Twp.*, 9th Dist. Summit No. 20632, 2001 Ohio Appl LEXIS 5688, *3 (Dec. 19, 2001). "An 'unnecessary hardship' does not exist unless the property is not conducive to any of the uses permitted by the zoning resolution." *Taylor Bldg. Corp. of Am. v. Clearcreek Twp.*, 12th Dist. Warren No. CA2001-04-028, 2001 Ohio App. LEXIS 5877, *4 (Dec. 24, 2001). "A zoning regulation imposes an unnecessary hardship which will warrant a variance only where the hardship is unique to a particular owner's property." *Fox v. Shriver-Allison Co.*, 28 Ohio App.2d 175, 181 (7th Dist.1971).

This is because, as noted by the common pleas court:

> The uniqueness of the hardship must stem from circumstances that are peculiar to the land, not the owner of the property. * * * It follows that the unnecessary hardship that will support the granting of a variance must relate to the land, not to the applicant-owner. Accordingly, hardship that is personal to the current applicant-owner will not support the granting [of] a variance.

2 Salkin, *American Law of Zoning*, Section 13:16 (5th Ed.2010).[4]

{¶ 44} Yet, even when the hardship is unique to the conditions peculiar to land and not merely to the individual property owner, it is well-established that "the person who has created the hardship can generally not apply for a variance based on the hardship." *Klein v. Hamilton Cty. Bd. of Zoning Appeals*, 128 Ohio App.3d 632, 637 (1st Dist.1998). In other words, "a hardship is not considered 'unnecessary' if the landowners imposed the hardship

---

4. Smith faults the common pleas court for citing as authority the American Law of Zoning treatise generally referring to that source as "a generic non-Ohio treatise" that should hold little to no weight. But, what Smith fails to realize is that this court has also relied on that treatise as recently as last year. *See Eckert v. Warren Cty. Rural Bd. of Zoning Appeals*, 12th Dist. Warren Nos. CA2017-06-095 and CA2017-07-107 thru CA2017-17-109, 2018-Ohio-4384, ¶ 45.

upon themselves." *American Outdoor Advertising*, 2003-Ohio-1820 at ¶ 10, citing *Consol. Mgmt., Inc. v. Cleveland*, 6 Ohio St.3d 238, 242 (1983). Therefore, as these principles suggests, the phrase "self-created" is merely referring to a condition that is personal to the individual property owner and not the unique conditions peculiar to land itself. This would include disputes between neighboring property owners like Smith and his brother.

{¶ 45} Based on the judicially defined phrase "unnecessary hardship" as set forth above, it is clear that the BZA did not base its decision denying Smith's application for a variance on "unlawful grounds" that went beyond the statutory authorization set forth by R.C. 303.14(B) and Section 1.307.5 of the WCRZC. We find quite the opposite to be true. That is, contrary to Smith's claim, a variance application can be denied where the alleged "unnecessary hardship" was self-created and personal to the property owner as opposed to the unique conditions peculiar to the land itself. Therefore, because the BZA was well within its authority granted by R.C. 303.14(B) and Section 1.307.5 of the WCRZC to deny the variance on the grounds stated within its decision, Smith's claim that the common pleas court erred by affirming the BZA's decision based on "unlawful grounds" lacks merit and falls well short of what would be considered the "epitome of arbitrariness" as Smith suggests.

### Sufficient Evidence to Establish an "Unnecessary Hardship"

{¶ 46} Alternatively, assuming this court was to find the BZA's decision to deny his variance application was based on lawful grounds, Smith argues the common pleas court nevertheless erred by affirming the BZA's decision because he provided sufficient evidence that the literal enforcement of the WCRZR would result in an "unnecessary hardship" to him. We disagree.

#### Physical Dynamics of the Property

{¶ 47} Smith first argues the common pleas court erred by affirming the BZA's

decision since the "unnecessary hardship" was not self-created and personal to him but instead unique to conditions peculiar to the land itself. Smith supports this claim by noting the "physical dynamics of the property" being in "close proximity" and "having a shared boundary" to that of his brother's neighboring property. Therefore, according to Smith, rather than a problem that was self-created and personal to him, the "unnecessary hardship" was the result of "the size and shape of his lot and the placement of his house too close to the boundary with the trouble-making neighbor." (Internal quotation marks omitted.)

{¶ 48} Although Smith's property shares a common boundary to that of his brother's, nothing about the "unnecessary hardship" in this case was due to the physical dynamics of Smith's property. The hardship was instead the result of Smith's tumultuous relationship with his brother. That is not to say the close proximity of his property to his brother's did not exacerbate their animosity towards one another. The record indicates that it most certainly did. But, rather than an issue that was unique to the conditions peculiar to Smith's property, it was Smith's contentious relationship with his brother that led Smith to erect the nonconforming fence at issue. This is true despite the fact that the record is devoid of any evidence indicating Smith was at fault for causing the fallout between him and his brother.

{¶ 49} Smith claims his brother is an abusive, disruptive, "bad," "recalcitrant," "trouble-making neighbor," who "drove him crazy." But, even if that were the case, Smith himself readily acknowledges that there would have been no need to erect the non-conforming fence "if the bad neighbor were two doors down." How can these issues be anything other than self-created and personal to Smith if they could be resolved simply by substituting his neighbor for someone other than his brother? Logic dictates that they cannot.

{¶ 50} This becomes clear when taking into consideration Smith's argument set forth

above; namely, that the "unnecessary hardship" was the result of "the size and shape of his lot and the placement of his house too close to the boundary with the trouble-making neighbor." (Internal quotation marks omitted.) Taken to its logical conclusion, if the "size and shape" of Smith's property and the "placement of his house to the boundary" next to a "trouble-making neighbor" would necessitate a variance being had, a variance would not be necessary if Smith instead lived next to a *non*-trouble-making neighbor who did not interfere with his enjoyment of his property. Therefore, as this example plainly shows, what is unique to the conditions peculiar to Smith's property is not the physical dynamics of the land but the fact that Smith lives next door to his brother with whom he does not get along.

{¶ 51} As previously noted, "[a] zoning regulation imposes an unnecessary hardship which will warrant a variance only where the hardship is *unique to a particular owner's property*." (Emphasis added.) *Shriver-Allison Co.*, 28 Ohio App.2d at 181. Therefore, as outlined more fully above, the "unnecessary hardship" in this case is not the result of any unique conditions peculiar to Smith's property. The "unnecessary hardship" alleged by Smith is instead self-created and personal to Smith due to his tumultuous relationship with his brother. This is true regardless of Smith's repeated assertions to the contrary.

<u>No "Good Reason" to Deny Smith's "Unopposed" Variance Application</u>

{¶ 52} Smith also argues the common pleas court erred by affirming the BZA's decision because there was "not a good reason" to deny his "unopposed" variance application. But, as the record indicates, the BZA did have a good reason to deny the variance based on the facts and circumstances of this case as applied to the applicable law as set forth above. That is, simply stated, the BZA's decision – as well as the common pleas court's decision to thereafter affirm the BZA's findings – was based on well-established case law addressing similar issues to the case at bar. The fact that the case law cited by the common pleas court in support of its decision did not address the exact

same factual scenario does not render that case law irrelevant and obsolete as Smith suggests. The case law relied upon by the common pleas court instead serves as guidance under the well-established principle of stare decisis.

{¶ 53} Under the legal doctrine of stare decisis, courts follow controlling precedent, thereby creating stability and predictability in our legal system. *State ex rel. Davis v. Pub. Emps. Retirement Bd.*, 120 Ohio St.3d 386, 2008-Ohio-6254, ¶ 38. The Ohio Supreme Court, as well as this court, generally "adhere to the doctrine of stare decisis as a means of thwarting the arbitrary administration of justice as well as providing a clear rule of law by which the citizenry can organize their affairs." *Westfield Ins. Co. v. Galatis*, 100 Ohio St.3d 216, 2003-Ohio-5849, ¶ 43, citing *State ex rel. Rocky River v. State Emp. Relations Bd.*, 43 Ohio St.3d 1, 4-5 (1989). "The doctrine is of fundamental importance to the rule of law." *Wampler v. Higgins*, 93 Ohio St.3d 111, 120 (2001). "This principle is universally accepted and unquestioned." *Id.*

{¶ 54} The common pleas court, not having any case law addressing this exact same factual scenario, analogized the available case law addressing what constitutes an "unnecessary hardship" to the facts and circumstances presented in this case. This precedent guided the common pleas court's decision to affirm the BZA's decision to deny Smith's application for a variance. The BZA acted appropriately at all times in reaching this decision. The same is true regarding the common pleas court. The fact that Smith does not agree with the BZA's decision to deny his variance application does not serve as a sound rationale that would warrant reversing the BZA's decision. Simply stated, the common pleas court found the BZA's decision denying Smith's application was "not arbitrary, unreasonable, capricious, or unsupported by the preponderance of the evidence." The common pleas court did not err in reaching this decision.

"Nature of the Cause of the Problem"

{¶ 55} Smith next argues the common pleas court erred by affirming the BZA's decision because a variance should not be denied based solely on the "nature of the cause of the problem." However, as discussed more fully above, the BZA reached its decision to deny Smith's variance application by properly applying the four-pronged inquiry set forth by both R.C. 303.14(B) and Section 1.307.5 of the WCRZC. This inquiry includes, at least implicitly, consideration of the "nature of the cause of the problem" in determining whether there was an "unnecessary hardship" that would allow for a variance to be had. Smith's claim that the BZA reached its decision without considering the "nature and cause of the problem" – that being Smith's tumultuous relationship with his brother – belies what is clearly set forth in the record before this court.

{¶ 56} Again, although couched in slightly different terms, Smith's insistence that "nature of the cause of the problem" was caused by the physical dynamics of the property is incorrect and unsupported by the record. The "nature of the cause of the problem," as discussed more fully above, was due to Smith's tumultuous relationship with his brother. Just as the magistrate found, Smith's "hardship does not relate to his land, but rather to his relationship with his brother, a purely personal matter. A variance is an inappropriate remedy for [Smith's] problem." The common pleas court affirmed and adopted the magistrate's decision in its entirety. When applying the applicable law set forth above, the record fully supports the common pleas court's decision to do just that.

Equity and Fairness Mandate Issuing a Variance

{¶ 57} Smith's final argument is essentially one in equity and fairness. As Smith claims:

> [A] trouble-making neighbor who disrupts and disturbs a
> property owner's peace, privacy, and quiet enjoyment of their
> property, justifies a few extra feet of fence under the law
> protecting a property owner's right to use of their property.

- 21 -

{¶ 58} This is because, according to Smith:

> Allowing [a few extra feet of fence] is not contrary to the public interest; due to those special conditions (residence in close proximity to a recalcitrant trouble-maker), a literal enforcement of the fence-height limit resulted in unnecessary hardship; and that variance is consistent with the spirt of the resolution and substantial justice done.

{¶ 59} We disagree with Smith's claims. While the record indicates the problems between Smith and his brother ceased after the nonconforming fence was erected, equity and fairness do not mandate the BZA grant Smith a variance. This is especially true here when considering the fence at issue stands in some places eight feet higher than what is permitted by the WCRZC. A contrary holding would essentially call on the BZA to mediate disputes between bickering neighbors – such as Smith and his brother here – who have decided to ignore the zoning requirements set forth in the WCRZC and resolve their dispute by erecting nonconforming physical barriers between their two properties. That is certainly not the BZA's role, nor should it be.

{¶ 60} In so holding, we note that there is nothing in the record to indicate a fence that complies with the requirements of the WCRZC would not have had the same impact as the nonconforming fence that is currently in place. There is also nothing in the record to indicate that planting trees or installing a berm as the BZA suggested would be insufficient to alleviate the problems between Smith and his brother. This is true despite the fact that trees may not grow as quickly as Smith would like. Smith had, and likely still has, many other options available to him besides keeping in place a fence that does not conform to the height requirements set forth by the WCRZC. Adhering to the requirements set forth by the WCRZC, rather than taking the matter into one's own hands by erecting a non-conforming 12-foot fence, is advisable even when faced with a disagreeable and disruptive neighbor who happens to be your brother.

**Conclusion**

{¶ 61} The common pleas court did not err by affirming the BZA's decision denying Smith's application for a variance. That is to say the common pleas court's decision to affirm the BZA's decision was supported by a preponderance of reliable, probative, and substantial evidence. A property owner's disagreement with his or her neighbor cannot be the basis for the issuance of a variance when there is otherwise nothing unique to the conditions peculiar to the land itself. We find this is true regardless of whether the "unnecessary hardship" standard or the alternative "practical difficulties" standard applies. Nothing mandates the BZA grant Smith's application for a variance simply because Smith asked for one. Therefore, finding no merit to any of the arguments raised herein, Smith's single assignment of error is overruled and the common pleas court's decision is affirmed.

{¶ 62} Judgment affirmed.

HENDRICKSON, P.J., and PIPER, J., concur.