[Cite as *Bayliff v. Stokes Twp. Bd. of Zoning Appeals*, 2024-Ohio-4839.]

# IN THE COURT OF APPEALS OF OHIO
## THIRD APPELLATE DISTRICT
## LOGAN COUNTY

JAMES R. BAYLIFF, ET AL.,

    PLAINTIFFS-APPELLANTS,            CASE NO. 8-24-12

    v.

STOKES TOWNSHIP BOARD OF
ZONING APPEALS,

    DEFENDANT-APPELLEE,

  -And-

BOB WARREN, ET AL.,                 **O P I N I O N**

    INTERVENORS-APPELLEES.

---

**Appeal from Logan County Common Pleas Court**
**General Division**
**Trial Court No. CV 23 05 0160**

**Judgment Reversed**

**Date of Decision: October 7, 2024**

---

APPEARANCES:

    *Christopher L. Englert* for Appellants

    *Eric C. Stewart* for Appellee Stokes Township Board of Zoning Appeals

    *Jeremy M. Tomb* for Appellees Bob and Joyce Warren

**WALDICK, J.**

{**¶1**} Plaintiffs-appellants, James and Pamela Bayliff ("the Bayliffs"), appeal the judgment of the Logan County Common Pleas Court entered in favor of defendant-appellee, the Stokes Township Board of Zoning Appeals ("the BZA") and intervening defendants-appellees, Bob and Joyce Warren ("the Warrens"), which affirmed the BZA's grant of a zoning variance to the Warrens. For the reasons set forth below, we reverse.

*Procedural Background and Relevant Facts*

{**¶2**} This case originated in late April of 2023, when the Warrens filed a zoning variance application with the BZA, relating to a piece of real property owned by the Warrens on Indian Lake in Lakeview, Ohio. In that application, the Warrens sought three variances of setback requirements for a new house they wished to build on the property, in order to remove and replace an existing house on the property that had suffered severe water damage. Specifically, the Warrens sought (1) a 2-foot variance of a 20-foot setback requirement for the front (street side) of the proposed new house; (2) a 2.5-foot variance of a 5-foot setback requirement for the sides of the house; and (3) a 15-foot variance of a 30-foot setback requirement for the back (lake side) of the house, the third variance being for a set of steps leading up to a proposed deck on the waterfront side of the house.

{**¶3**} On May 15, 2023, a public hearing was held on the Warrens' application.

{¶4} At the start of the May 15th hearing, the township zoning officer, Mr. Stewart, informed the board members that the application had been reviewed and that he was recommending approval. Stewart stated that through no fault of the Warrens, the existing house on the property suffered water damage and that it would cost the same to repair the home as it would to build a new one. Stewart noted that the Warrens would be "basically putting it back on the same footprint." (5/15 Tr., 3). Stewart noted that lot location was "a tight area" but that the proposed new house was 300 to 400 square feet smaller than the homes on either side of it. (*Id*.).

{¶5} Stewart then presented letters submitted from two of the Warrens' neighbors. The first letter, from neighbor Kent Miller, asserted that the proposed new house should not be built other than on the footprint of the existing house. Miller also specifically opposed the requested third variance, relating to the back deck steps, on the basis that the proposed steps could impose on Miller's view. The second letter, from neighbors Mike and Mindy Dutko, opposed all three requested variances on the basis that, given the size and shape of the Warrens' lot, the proposed new structure would further crowd an already crowded area and therefore negatively impact the value of the Dutkos' property. The Dutko letter also noted that, should a variance be granted, the Warrens' proposed house would sit so close to the Dutkos' house that it would kill the Dutkos' grass and landscaping on the side of their home, that the proposed house would reduce the Dutkos' current lake view, and that the second-story gutters of the Warrens' proposed house would be less than

two feet from the gutters on the Dutkos' home, creating a safety concern and preventing access for fire and rescue equipment.

**{¶6}** Attorney Jill Henson then spoke on behalf of the Bayliffs, who are the Warrens' neighbors to the north and who also opposed the requested variances. Henson took exception to the zoning officer's statement that the Warrens' proposed house would have essentially the same footprint as their existing house. Henson pointed out that the proposed new home would be eight feet closer to the Bayliffs, and also closer to the water. Henson stated that because the Warrens planned to build up, the second story of the proposed house would be an extremely tight fit on the property and would obstruct the Bayliffs' views. Henson also questioned whether first responders could get in between the houses with equipment if the variances were granted. Henson submitted that the Warrens were seeking to build a house on their property that was just too big for the lot. Regarding the zoning officer's statement that the proposed house would be smaller than the neighboring houses, Henson pointed out that the lots on either side of the Warrens' lot were bigger than the Warrens' property. Henson stated that granting the proposed 15-foot variance for the steps to the back deck would also result in encroaching on the Bayliffs' use of their property. Henson suggested that the Warrens could build a smaller deck on their proposed new house and thereby adhere to the 30-foot setback on the lake side of the house, which would prevent obstruction of the Bayliffs'

views. Henson noted that the proposed new house itself would be 8 feet closer to the water than the current house.

**{¶7}** Dale Bensman, the home builder working with the Warrens to design the proposed new house, then spoke to the board. Bensman said the Warrens' lot had been surveyed, the lot is tight, and that building the new house within the zoning setbacks would make the new house "a little bit functionally obsolete." (5/15 Tr., 13). Bensman stated that "trying to replicate" the existing house within the setback requirements would "make it really tough." (*Id.*). Bensman noted that the front (street side) of the proposed house would be in line with the existing house, but not without a variance. Bensman indicated that the sides of the proposed house would actually be further from the property line in spots, and so the new house would actually increase the setback from that of the existing home but, again, a variance would be required to do so. Bensman stated that the lake side of the proposed house would extend out 8 feet more than the current house, but that extension would still be within the setback requirements; however, for the Warrens to make their deck bigger, a 15-foot variance would be required for the steps from the deck to the boat lift.

**{¶8}** At that point, Ms. Henson interjected and noted that granting that 15-foot variance would permit the Warrens to build a bigger house with a bigger deck, instead of complying with the zoning laws, which could be accomplished by building a smaller deck.

{¶9} One of the board members then asked Bensman whether the steps could be built into the planned deck, instead of the steps being built off the back of the deck. Bensman answered that the steps could be built into the deck if the 15-foot variance was not granted.

{¶10} Ms. Henson then submitted to the board that variances should only be granted if the strict application of the setback restrictions would result in unnecessary hardship and she asserted that was not the case here. Rather, Ms. Henson noted, the variances were being sought so that the Warrens could build a bigger house.

{¶11} Ms. Henson was then interrupted by the chairman of the zoning board, who stated that the water damage to the house creates a hardship. The chairman then noted that the Warrens' existing house was in violation of the current setback requirements but that the existing house was "grandfathered in." (5/15 Tr., 24).

{¶12} At that point, the chairman made a motion to grant the variances and, following a vote by the BZA members, the Warrens' variance application was approved, with the condition that no closed railings or flower boxes would be permitted on the rear deck.

{¶13} On May 30, 2023, the Bayliffs filed an administrative appeal of the BZA decision with the Logan County Court of Common Pleas.

{¶14} On June 12, 2023, the Warrens filed a motion to intervene as additional defendants in the administrative appeal, which was granted by the trial court on June 16, 2023.

{¶15} On July 19, 2023, the trial court granted a motion to stay filed by the Bayliffs on May 30, 2023, and ordered that the effectiveness of the variances granted by the BZA be stayed until the resolution of the pending administrative appeal in the trial court.

{¶16} On August 21, 2023, upon joint motion of the parties, the common pleas court filed an order remanding the case to the BZA for further consideration of the variance application, on the basis that the BZA had failed to file conclusions of fact as set forth in R.C. 2506.03(A)(5) .

{¶17} On remand, the BZA held a second hearing on the Warrens' variance application on September 18, 2023.

{¶18} At the September 18th hearing, the Warrens were represented by counsel, who called Dale Bensman to give additional testimony. As before, Bensman explained that he was a residential builder working with the Warrens. Bensman stated that the Warrens' current house on Indian Lake had suffered extensive damage after a water pipe froze and burst. Bensman was asked if it was economically feasible to rehabilitate the existing house, to which he answered:

> My feeling was, no. I mean, I guess it depends how you look at. [*sic*] Looked at with the amount of work that had to be put into it, the existing structure, the age of the structure, the quality of the structure.

> Doing a renovation project on the building in the condition it was in, I felt it would be more economical, make more economical sense, more feasible to build it – to remove the existing structure and build new.

(9/18 Tr., 7).

{¶19} Bensman stated that he was involved in the design of the proposed new home and that due to the wedge-shape of the Warrens' lot, it would be difficult to build a house on the lot within the setbacks to allow for comfortable living. Bensman indicated that the Warrens would be spending "a decent amount of money" for their new house and that it did not make economical sense to build a smaller house with a poor layout within the setbacks. Bensman identified several exhibits that showed the location of the current house on the lot, the location and layout of the proposed new house, and the setbacks from the lot lines. Counsel then asked whether building within the setbacks would be an unnecessary hardship because the house would not be "functional", and Bensman answered, "My opinion, yes." (9/18 Tr., 14).

{¶20} Counsel for the Bayliffs then questioned Bensman, and asked him to describe what "functional" meant. Bensman answered, "I guess a typical layout, something that has the suitable width for hallways, you know, bedrooms, kitchens, just something that's functional." (9/18 Tr., 16). Bensman was asked "[b]ut can you put a house on it * * * under the current setbacks if there was no variance granted?", and Bensman answered "yes." (*Id.*). Bensman was asked whether the water and

mold damage to the Warrens' current house amounted to a total loss for insurance purposes, and Bensman indicated he did not know.

{¶21} Following the presentation of Bensman's testimony, counsel for the Bayliffs argued their case to the board, noting that pursuant to Ohio law and the township zoning resolutions, the Warrens were required to demonstrate an unnecessary hardship before the variances could be granted. Counsel asserted that no such showing had been made, as the Warrens were still able to use their property within the setback requirements. Counsel argued that because the Warrens could build a house in compliance with the setbacks, albeit not necessarily the house they want to build, the variance application should be denied.

{¶22} Counsel for the Warrens then addressed the board and argued that unnecessary hardship results when there is no economically feasible permitted use of the property. Counsel asserted that the flooded and damaged condition of the Warrens' existing house is a hardship, and that the requested variances relating to the setback requirements should be granted in order to permit the Warrens to build a functional home.

{¶23} At that point, the matter was voted upon by the BZA members and the Warrens' variance application was again approved.

{¶24} After a finding of facts by the BZA relating to the hearing process was filed with the trial court, proceedings then resumed in the administrative appeal pending in that court. Briefs in support of the parties' respective positions were

subsequently filed by counsel for the parties and, on February 20, 2024, the trial court filed a judgment entry affirming the BZA's decision.

{¶25} On March 19, 2024, the Bayliffs filed the instant appeal, in which they raise one assignment of error.

## Assignment of Error

**The trial court committed an abuse of discretion and/or an error of law when it affirmed the appellee BZA's decision based upon the improper application of Zoning Resolution Subsections 450 (1) and (3) to this case.**

### *Standard of Review*

{¶26} In *Haisley v. Mercer Cty. Bd. of Zoning Appeals*, 2007-Ohio-6021 (3d Dist.), this Court set forth the standards of review applicable to zoning appeals as follows:

> When reviewing the judgment of the board of zoning appeals, the common pleas court considers the whole record, including any new or additional evidence admitted under R.C. 2506.03, and determines whether the administrative order is "unconstitutional, illegal, arbitrary, capricious, unreasonable, or unsupported by the preponderance of substantial, reliable, and probative evidence." *Briggs v. Dinsmore Twp. Bd. of Zoning Appeals* (2005), 161 Ohio App.3d 704, 707, 831 N.E.2d 1063, 2005-Ohio-3077 see also *Henley v. Youngstown Bd. of Zoning Appeals* (2000), 90 Ohio St.3d 142, 147, 735 N.E.2d 433, 2002-Ohio-493.

> Alternatively, this Court has concluded that "[t]he standard of review to be applied by the court of appeals in an R.C. 2506.04 appeal is 'more limited in scope.'" *Briggs,* 161 Ohio App.3d at 707 citing *Kisil v. Sandusky* (1984), 12 Ohio St.3d 30, 34, 465 N.E.2d 848.

*Haisley*, at ¶¶ 9-10.

More specifically, with regard to appeals pursuant to R.C. 2506.04:

This statute grants a more limited power to the court of appeals to review the judgment of the common pleas court only on 'questions of law,' which does not include the same extensive power to weigh 'the preponderance of substantial, reliable and probative evidence,' as is granted to the common pleas court. It is incumbent on the trial court to examine the evidence. Such is not the charge of the appellate court. * * * The fact that the court of appeals, or this court, might have arrived at a different conclusion than the administrative agency is immaterial. Appellate courts must not substitute their judgment for those of an administrative agency or a trial court absent the approved criteria for doing so.

*Haisley*, at ¶ 10, quoting *Briggs*, 161 Ohio App.3d at 707-708. "Furthermore, this Court has recognized that administrative appeals under R.C. 2506.04 are reviewed under an abuse of discretion standard." *Id.* An abuse of discretion implies that the trial court's decision was unreasonable, arbitrary, or unconscionable. *Blakemore v. Blakemore*, 5 Ohio St.3d 217, 219 (1983).

{¶27} "'[T]his court must affirm the common pleas court's decision unless it finds, as a matter of law, that the lower court's decision was not supported by a preponderance of reliable, probative, and substantial evidence.'" *Smith v. Warren Cty. Rural Zoning Board of Zoning Appeals*, 2019-Ohio-1590, ¶ 18 (12th Dist.), quoting *Taylor v. Wayne Twp. Bd. of Trustees*, 2009-Ohio-193, ¶10 (12th Dist.).

*Trial Court Decision*

{¶28} In this case, the trial court affirmed the decision of the BZA in a written opinion filed on February 20, 2024. In that judgment entry, the trial court

-11-

denied the Bayliffs' appeal "because the Warrens [*sic*] rebuilt house as designed will qualitatively and quantitatively reduce the nonconformity of the house as set forth in subsection (1) of Section 450 of the Indian Isle Zoning Code." (Docket No. 33, p. 1). On that basis, the trial court affirmed the BZA decision "to grant the Warrens an unnecessary hardship variance to the requirements of subsection (3) of Section 450." *Id.*

{¶29} In support of its decision, the trial court initially noted that the Warrens' existing house does not conform to the current setback requirements, as the house was built prior to the township enacting its zoning code in May of 2010.

{¶30} Because of the preexisting nonconformity of the Warrens' existing house, the trial court turned to Article IV of the Stokes Township Zoning Resolution, which governs nonconformities. Specifically, the trial court cited to Section 400 and Section 450 of the Zoning Resolution, which provide in relevant part:

> **Section 400 Intent.** Within the districts established by this Resolution * * * there exists [*sic*] lots, uses of land, structures, and uses of structures and land in combination which were lawful before this Resolution was passed * * * but which would be prohibited, regulated, or restricted under the terms of this Resolution * * *. It is the intent of this Resolution to permit these non-conformities to continue until they are removed or discontinued. It is further the intent of this Resolution that non-conformities shall not be enlarged upon, expanded or extended * * *.

> **Section 450 Non-Conforming Structures.** Where a lawful structure exists at the effective date of adoption * * * of this Resolution * * *, such structure may be continued so long as it remains otherwise lawful, subject to the following provisions:
>
> 1. No such non-conforming structure may be enlarged or altered in a way which increases its non-conformity, but any structure or portion thereof may be altered to decrease its non-conformity;
> 2. Should such non-conforming structure * * * be destroyed by fire or an Act of God, it may after approval by the Board of Zoning Appeals, be reconstructed as it previously existed. * * *
> 3. Should such structure be moved for any reason for any distance whatever, it shall thereafter conform to the regulations for the district in which it is located after it is moved.

**{¶31}** The trial court then applied those sections of the Resolution to this case, and found that Subsection (3) of Section 450 conflicts with Subsection (1) of Section 450, while noting that "[i]t is indisputable that the Warrens desire and intend to move and relocate the house on the property." After some additional analysis, the trial court concluded that Subsection (1) was controlling and found that the Warrens are permitted to rebuild their house as requested "because that location and reconstruction complies with subsection (1) of Section 450 of the Code." (Docket No. 33, p. 8). Specifically, the trial court found that the BZA's decision "to permit the Warrens to rebuild the house as designed was supported by a preponderance of substantial, reliable, and probative evidence that demonstrated the Warrens [*sic*] rebuilt house will reduce the existing nonconformity." (*Id*.). The trial court then concluded that:

> Stokes BZA's decision to grant the Warrens a variance from subsection (3) of Section 450 is also supported by substantial, reliable, and probative evidence. "Unnecessary hardship" arises when "property is unsuitable to any of the permitted uses as zoned." Here, the property is unsuitable to the permitted reduction of the nonconformity without the variance. Thus, it follows that to deny the Warrens the variance would result in unnecessary hardship because it would deny the permission to rebuild in a manner that reduces the nonconformity.

(*Id.*).

*Analysis*

**{¶32}** In the sole assignment of error, the Bayliffs assert that the trial court erroneously applied Subsection 450 to this case and abused its discretion in upholding the BZA decision granting the three requested variances to the Warrens. Upon review, this Court finds the Bayliffs' contentions to be well-taken.

**{¶33}** The trial court's reliance on Section 450, Subsection (1), of the Zoning Resolution was misplaced in this case. The evidence presented at the hearings incontrovertibly established that the Warrens sought three variances in order to tear down their existing house and then build a brand new home. Thus, the Warrens do not intend to "alter" their preexisting, nonconforming house in a manner that would potentially fall under the terms of Subsection (1) of Section 450, as their current house would not be undergoing alterations. Rather, the preexisting house would be removed entirely and then a completely new house would be built in its place. Pursuant to Section 400, *supra*, the intent of the Zoning Resolutions is to only permit preexisting nonconforming structures to remain in nonconformance with the zoning

regulations until any such structure is removed. Accordingly, under the regulations found in Article IV, once the Warrens' existing house is removed, as they intend to do, "reducing the non-conformity" is no longer a permissible option.

{¶34} Instead of focusing, as the trial court did, on the regulations found in Article IV of the Zoning Resolutions relating to preexisting, nonconforming structures, a review of the BZA decision in this case requires the application of Section 543 of the Zoning Resolution, which governs variances.

{¶35} Section 543 provides:

> The Board of Zoning Appeals may authorize upon appeal in special cases such variance from the terms of this Resolution as will not be contrary to the public interest where, owing to special conditions, a literal enforcement of the provisions of this Resolution would result in unnecessary hardship. No non-conforming use of neighboring lands, structures, or buildings in the same district and no permitted or non-conforming use of lands, structures, or buildings in other districts shall be considered grounds for issuance of a variance. Variances shall not be granted on the grounds of convenience or profit, but only where strict application of the provisions of this Resolution would result in unnecessary hardship.

{¶36} "Unnecessary hardship results when there is no economically feasible permitted use of the property because of characteristics unique to the property." *In re Appeal of American Outdoor Advertising, LLC*, 2003-Ohio-1820, ¶ 10 (3d Dist.).

{¶37} In this case, as previously noted, the Warrens seek to raze their preexisting house and then build a brand new home on the same lot. In order to build the new house that they desire, the Warrens sought variances of the setback requirements for the front, sides, and back of the house. Obtaining those variances

therefore required a showing that an "unnecessary hardship" would result if the variances were not granted.

**{¶38}** A review of the evidence presented to the BZA reveals that both the BZA and the trial court erred as a matter of law in determining that an application of the setback requirements to a new house built by the Warrens would result in unnecessary hardship. On the contrary, the evidence in this case failed to demonstrate that the Warrens would suffer an unnecessary hardship if their variance application was not approved.

**{¶39}** There was no evidence presented that the Warrens' preexisting house was a total loss as a result of the water damage or that they were unable to rebuild that home or, alternatively, that they were unable build a new house in compliance with the township's setback requirements. Moreover, the Warrens' builder, Dale Bensman, was specifically asked at the hearing whether a house could be built on the Warrens' lot in compliance with the setback requirements if no variances were granted, and Bensman answered "yes". (9/18 Tr., 16).

**{¶40}** While there was evidence that it made more economic sense for the Warrens to build a new house instead of repairing and renovating the current house, Section 543 of the Zoning Resolution, *supra*, expressly provides that, "[v]ariances shall *not* be granted on the grounds of convenience or profit * * * ." (Emphasis added).

{¶41} Ultimately, based on the evidence presented to the BZA, the Warrens' plan to build a new house that does not comply with the setback requirements amounts to a discretionary choice based on their desire to have a larger, more comfortable home than one that would comply with the setbacks. That desire on the Warrens' part, while understandable, is nonetheless a voluntary decision and the inability to build such a home does not amount to an unnecessary hardship pursuant to law. *See Seaman v. Richland Twp. Bd. of Zoning Appeals*, 2001-Ohio-2143 (3d Dist.).

{¶42} Since the evidence presented to the BZA did not establish that an unnecessary hardship would result from applying the township setback requirements to the Warrens' proposed new house, and because the trial court applied an erroneous legal test when reviewing the BZA decision, the trial court erred in affirming the BZA decision.

{¶43} The assignment of error is sustained.

*Conclusion*

{¶44} Having found error prejudicial to the appellants as raised in the assignment of error, the judgment of the Logan County Court of Common Pleas is reversed, and the case is remanded with instruction to the trial court to enter judgment reversing the decision of the Stokes Township Board of Zoning Appeals.

***Judgment reversed.***

**WILLAMOWSKI, P.J. and ZIMMERMAN, J., concur.**